*426
 
 Cooke, J.
 

 delivered the following opinion of the court.
 

 The bill charges that a grant issued to Lazarus Flora, by
 
 *427
 
 the state of North Carolina, for 274 acres of land, by whom previous to his death, the same was devised to the defendant Jesse Flora; that Jesse Flora not knowing where the land was situated, applied to the complainant, and proposed to give him the one half of the tract if he would find it, and be at the expence of investigating the title; and to sell him the other half at a price to be fixed by valuers chosen for that purpose, payable in horses; and that a contract was made and reduced to writing, in pursuance of such proposition; that the complainant made search in the land office, and other places, and found the situation of the land
 
 ;
 
 that afterwards Jesse Flora with a view to cheat the complainant, sold and conveyed the whole tract to the defendant Daniel Cherry, who at the same time had full knowledge of the equity on the part of the complainant. It is also charged that the complainant let Flora have a horse, bridle and saddle, at the price of one hundred dollars, and that it was agreed that, should the land be found, it was to stand as so much paid towards the purchase of half of the tract according to the agreement.
 

 The bill prays that the land may be conveyed to the complainant.
 

 Flora answers, in substance, that the agreement was made as set forth in the bill; but that White was guilty of great fraud and concealment in the transaction; that the land did not lie more than three miles from White’s house, and that the situation of it was well known to White
 
 at
 
 the time the contract was made, although he represented himself to be entirely ignorant upon the subject; and indeed, caused Flora to believe it would require great labor and influence to ascertain where the land lay. Flora admits that he sold and conveyed the land to Cherry, believing that White could not compel a performance of the contract, in consequence of the fraud and misrepresentation which he used; that he is willing to pay White the hundred dollars mentioned in the bill upon application; but denies that the horse, bridle, and saddle were received in part payment of the
 
 land.
 

 Cherry’s answer, contains the same allegations as to the fraud practised by White, of which transaction he admits he was well informed, when he took the deed from Flora. He further answers that Wm. Walton was the locator of the 274 acres, for which service he was entitled, by contract to fifty-four acres, which had been conveyed to him by Lazarus Flora in his life time, and that Walton had sold and conveyed the fifty-four acres to Willie Cherry, under whom Daniel Cherry claims as devisee; that Willie Cherry after the death
 
 *428
 
 of Flora the elder, and during the infancy of the defendant Jesse Flora, for the sum of two hundred and five dollars, purchased of the defendant Jesse and his Mother, the tract of land, after deducting the locators part; and that young Flora and his mother then executed a deed for the land accordingly; that when young Flora came of age, he paid him so much more for the land as made the whole sum amount to one thousand dollars; that this additional sum was given because it was thought that the land had been purchased by Willie Cherry in the first instance at two low a price, and he, Daniel Cherry was willing that Flora should have what it was worth.
 

 The proof in the cause shows that young Flora and
 
 a
 
 man by the name of Biggs had been hunting for the land, and being unsuccessful, came to White’s, and inquired of him, if he knew any thing of the land; he replied that he did not. Flora then pressed him to take a part of the land for finding it and paying the expence of investigating the title, which White at first refused to do; but finally, after much persuasion, the contract was closed as set forth in the bill. The parties then went to an attorney to have writings drawn; and the attorney is particular in stating that he was careful in making Flora understand the nature of the agreement. Flora said he was illiterate, and a stranger in the country, and was willing to make a liberal allowance for finding and securing the land. He said at the same time he had just come of age; that his mother had sold the land when he was an infant, but he had received no part of the consideration money, and had always determined when he came of age, to dissent from the contract. The agreement was signed on the 18th day of August 1807, and both parties went on to Nashville, which was only a few miles, to search the registers office. White got a copy of the grant, and the next day, on application to one Thomas Bradley, White found where the land was, and that it lay within two or three miles of his own house. The title has not been disputed.
 

 There is no satisfactory proof going to show that White knew where the land was situated, before he made the contract with Flora.
 

 The purchase of the horse, bridle, and saddle, was proved to be in the manner set forth in the bill; and that the day after Bradley told White where the land lay, White and Flora went together on the land, and verbally agreed that the half to be purchased by White, should be valued by
 
 Bradley.
 
 Flora seemed then well pleased with the contract
 
 *429
 
 he had made. Some short time after this, Cherry made propositions to Flora, to get a deed for the land, which were at first rejected, but finally agreed to, and the deed made as set forth by Cherry in his answer. Cherry at the same time gave Flora a bond of indemnity against the claim of White.
 

 To the specific execution of the contract sought by the complainant, the defendants counsel in the argument, object on several, grounds:
 

 1st. The fraud alledged to have been practised by the complainant upon Flora.
 

 2d. The inadequacy of the consideration givers by the complainant.
 

 3d. Because the deed signed by Flora and his mother, conveyed a legal estate,
 
 voidable
 
 but not
 
 void,
 
 which was affirmed by Flora when he came of age.
 

 4th. Because at least that deed created an equitable interest prior to the interest of the complainant.
 

 We shall notice these several objections in their turn.
 

 1st. there is no proof of fraud on the part White. It is true, when he was first applied to by the defendant Flora, he represented himself as wholly ignorant of the situation of the land, but it is equally true, that no proof has been shown to us that this representation was false. If the fact had been with the defendant upon that point, we should have no hesitation in saying the complainant ought not to have a decree. When the complainant was applied to, with a view to ascertain his knowledge upon the subject of this land, if he then knew where it was, a representation on his part that he did not know, would have been a fraud, inasmuch as by means of it, Flora would, in all probability have been induced to give a greater price for the trouble and labor of searching, and the expences incident to an investigation of the title. In all cases of contract, any representation of a falsehood, or concealment of a truth, which, if correctly known would probably be a reason for making the terms of the contract different, will be a good ground for rescinding the agreement in a court of equity. Equity delights in doing justice, it delights in compelling men, by means of an appeal to the conscience, to do those things which ought to be done. To effect so desirable an object, strict regard must be had that no one is permitted to enjoy
 
 p
 
 roperty which has been procured through means of an unreal appearance of things, more particularly if that appearance is the result of the fraudulent machinations of the person who seeks to be availed of it.
 

 These remarks do not apply to cases of
 
 mutual mistakes, and
 
 
 *430
 
 where there is not on either side, fraud, concealment, or misrepresentation.
 
 Cooke's Rep.
 
 460.
 

 Had White known where to find the land, and apprised Flora of such knowledge, it is more than probable that Flora would not have given so much for the information, as if he imagined that White was as ignorant of its situation as himself
 
 ;
 
 and would most likely be put to some considerable trouble and expence in finding it. Therefore the representation on the part of
 
 W
 
 hite, that he knew not where the land was, if he did know, was a fraud: but there is no proof that he concealed any fact within his knowledge, or made any suggestion inconsistent with truth.
 

 2d. It is also urged that there is in this case great inadequacy of consideration; and that therefore the court ought not to decree a specific performance of the contract with Flora, Newl
 
 Cont.
 
 65. 66. 69.
 

 When a complainant comes into a court of equity for the purpose of having a contract rescinded on the ground of mere inadequacy of consideration, all the books agree that relief cannot be afforded. The mere circumstance of the sum paid being greatly inferior in value to the thing constracted to be purchased, will not of itself, be sufficient to set aside an agreement; but it is in many instances strong evidence of fraud and imposition, and coupled with other matters, such as the embarrassment of one of the parties, or the like, may frequently occasion the interference of a court of equity. But the situation of a complainant seeking to enforce the execution of an unreasonable and unconscientious bargain is placed on a ground very different. In such cases, the court has a discretionary power; it will either cause the agreement to be executed
 
 or
 
 not, depending upon the equity of the whole case, Newl. Con. 68.
 

 What cases of mere inadequacy of consideration, will authorise the court to refuse lending its aid to enforce an agreement, is not now necessary to be specified, as we are of opinion this is not one of them.
 

 The sum it really cost White to find this land, is, as we conceive, not the proper question; the bargain was clearly a risking on
 
 e;
 
 it might cost only a few dollars to find the land, or it might cost the worth of the land itself. At the time the contract was made, it
 
 was
 
 utterly unknown to the parties, and impossible to tell, which had the advantage; for any thing then known, the result might prove equally valuable, or much more advantageous to one than to the other. Every fact, tending to remove uncertainty, was wholly unknown. If
 
 White
 
 had in the end been put to an expence
 
 *431
 

 more
 
 than sufficient
 
 to
 
 absorb the whole value of the land, an event which no man can say was impossible, could a court of equity have relieved him? Could Flora be compelled to pay him for his trouble and expence, and rescind the contract as to land? Clearly not. Why not, then, make the situation of the parties reciprocal? Here, White found this land at a cost much beneath what probably would have been given, had the trouble and expence been previously known; But is that any reason why the contract ought not to be specifically executed? When we are asked, not to inforce an agreement merely upon the ground of the consideration being inadequate, in a case where that consideration was to be performed in services of an uncertain and dubious value, it is impossible for us not to look at what might have been the amount. When we look at that, we believe there is nothing in it to prevent the interference of this court.
 

 3d. It is alledged that the deed made by Jesse Flora when an infant, was only voidable. 3 Burr 1801.
 

 We are also of that opinion. This deed conveys an immediate interest, or estate, and consequently is not
 
 void,
 
 but
 
 voidable,
 
 But how is it to be avoided
 
 ?
 

 It is also urged that when Jesse Flora came of age, he affirmed the contract made with Willie Cherry in his lifetime; and that he did not in any legal manner dissent from the same.
 

 We will consider these several propositions together.
 

 The privilege allowed infants after they have arrived at full age, to avoid their contracts made during infancy, is personal to them, their heirs, or some person claiming their estate under them; it is a question in which third persons have no right to interfere. Deeds executed by infants, are voidable, so soon as their minority ceases. At that period the minor may affirm the agreement if he choose, or he may avoid it, by signifying his dissent. The deed passes a legal estate, which, although voidable, remains in the bargainee until it is actually avoided. Some acts done tend to show an affirmance of the deed, and afterwards the bargainor cannot avail himself of the plea of infancy. What circumstances amount to such acts, are not necessary to be particularized, as the great consideration in this case is, was the deed disaffirmed in consequence of the agreement made with the complainant
 
 ?
 
 To enter on the land, claiming it adversely to the bargainee, would be a disaffirmance; and perhaps as a general proposition, we could not give the idea entertained by the law more correctly, than by saying in one word, that any act tending to show an unequivocal disposition not to abide by
 
 *432
 
 the contract, made during minority, will be considered as avoiding it. To bring a suit is not necessary.
 

 It is difficult to conceive a case where the dissent of the infant would be more strongly and certainly expressed than was in this instance. The moment he came of age, he started out to this country in search of the land, which he had previously sold to Cherry, expressing in undoubted terms, that he would never agree to the deed, and assigning at length the reasons by which he was influenced. So soon as he arrived here, he made inquiry for the land, and exercised an act of ownership over it, by making a contract, and executing his bond, to sell and convey the whole of it. After the land was found, he actually entered upon it, in company with the complainant, and proceeded to make some partial arrangements relative to fixing the value of that half which he had contracted to sell to the complainant. He did every thing in his power to disapprove the deed made to Willie Cherry, and to vest the title in the complainant, except actually executing a deed to him. He went upon the land, received part of the consideration, and gave his bond to convey. After this he had not the power to affirm the deed made to Willie Cherry, so as to injure the equitable interest acquired by White; more especially if such affirmance was received by the defendant Cherry with a full knowledge of all the previous circumstances. The deed made to Daniel Cherry, the defendant, if upon good consideration, and without notice of the equity of the complainant, would convey an estate not liable to be disturbed by the complainant; but this would be upon considerations having no connection with the idea of rescinding or affirming the bargains made by infants.
 

 We are therefore of opinion that the third objection is untenable.
 

 When
 
 a
 
 person who has the legal title, is asked to divest himself of it by another,
 
 who
 
 alleges himself to be the owner in equity, it will be a good answer to the prayer for relief, to say, that the legal estate is bottomed upon a previously equitable interest. If the owner of the legal estate, has also an equity, he ought to be preferred to one having an equity only, upon the maxim that where the equity is equal the law must prevail.
 

 But to produce this state of things, what must be the nature of the equity
 
 ?
 
 It is here said that Willie Cherry having paid a consideration, created an equity. We answer, he did
 
 not,
 
 nor could he create an
 
 equ
 
 ity.
 

 The deed executed to him by Flora the younger created no sort of title beyond what the
 
 law
 
 contemplated; the in-
 

 
 *433
 
 terest transferred by it, could not have been the foundation of equitible relief. Upon it no decree could have been bottomed, as the contract was just as liable to be avoided in a court of equity as a court of law.
 

 There is no case where the holder of a legal title, is protected in the enjoyment of it, upon the ground of a previous equity, where that equity could not be the means of forcing the legal title out of the person with whom the equity was created.
 

 The deed to Willie Cherry could not have been the foundation of any decree against. Jesse Flora; it therefore created no equitable interest, and cannot be coupled with the legal title now in the defendant Daniel Cherry.
 

 The complainant is therefore entitled to a decree for the balance of the land, after deducting the fifty four acres conveyed by Walton the locator, upon his paying up to the defendant Daniel Cherry the value of the one half of such balance in horses, agreeably to the contract made with Flora.