Per Curiam.
This is a bill in equity. The facts charged and admitted are, that a dissolution of their partnership was agreed on, on the 26th of November, 1808. White was to receive all debts due to the firm, and to pay all debts due from it; to have all the goods, stock, and real estate belonging to the firm, and to give two bonds to Cox, payable in twelve and eighteen months, for $1,776 each ; that they made a schedule, a copy of which is annexed and is objected to only as to some omissions. The facts charged and not admitted, but proved, seem to be these. That the debts transferred were $7,104; the plaintiff says $7,535.75. That White was intoxicated * at the time is partly admitted by the defendant, who says he was not more so 'than usual, and intimates that he was always so. And by Cox’s confessions made to a witness, it appears that the plaintiff was drawn in by him to drink, and that he was stimulated by Cox’s offers to make offers himself. That Cox had gotten an advantageous bargain, the plaintiff having not taken that care of himself against ebriety which, by a letter written to Cox before that period, he had urged Cox to take of himself. That he, Cox, had not acted amiss, for that White’s property would be taken by others, he being in declining circumstances. It is charged that $2,280.37^- was due. from insolvent persons. These debts and all others transferred, the plaintiff charges that Cox represented to be on solvent persons. Cox says the greater part of these $2,280 might have been collected by-proper diligence; but says he did not state that those who owed that sum were solvent. It is believed that he represented all the debtors to be solvent who owed the debts transferred by him. For he states that he deducted for insolvents $3,552 from $11,250 remaining after debts due from the firm were deducted. The residue then which he transferred must have been considered by White as purged of insolvencies, and must have been transferred as such by Cox. He does not meet this allegation by a direct denial. He only says that he made no such representation as to the $2,280 mentioned in the bill. This may be true as to the par *66 ticular debts included in this sum; and it may also be true that he may have stated that those who owed the $7,104 were solvent. The answer in this instance is evasive and not direct as to a very material fact, which circumstance, taken in conjunction with the deduction for insolvents before adverted to, may be considered to afford a fair inference, that he made the representation charged to him as to the whole sum * transferred. As to the solvency or insolvency of the debtors who owed the several sums which formed the said $2,280, the proof is that they were insolvent; that is to say, some of them, who altogether owed to the amount of $193.14, had paid Cox himself before the transfer ; others, who altogether owed to the amount of $1,456.50§, were insolvent at the time of the transfer. Others, who owed to the amount of $67,' had been arrested and discharged by Cox from execution. Others owed altogether the amount of $1,000 who, though solvent, have not paid, and cannot be compelled to pay. The whole of these several sums amount to $2,916.69§, and are more than equal to the $2,280. The whole amount of sums transferred are rather to be taken as amounting to $7,104 than to $7,635.75, because the half of the former is the precise sum for which the two notes were given to the defendant. And it is not unfair to infer the defendant’s knowledge of these insolvencies at the time of the transfer. He transacted all the business, and must, in all probability, have informed himself of the situation of the debtors. He is charged to have received $172,101 of the debts transferred before the time of the transfer. His answer supposes that was meant of a debt due from Beard. It is not certain that this supposition is correct. It is possible, however, that this sum is part of $193.14 before mentioned, and is, therefore, established by proof. He is charged with a bank bill of $50 paid by the firm .to Colonel Meigs, which turned out to be a counterfeit, which was not mentioned by the defendant at the time of the transfer as a >debt due from the firm, but which the plaintiff had to pay for the firm. This the defendant must have known of at the time of the transfer. It is charged against the defendant * that he purchased the Poplar Creek lands with money belonging to the firm, and gave no account of it when the settlement was made. He says he purchased them with his own money. The proof is that these lands were sold for a debt due to the firm, bid *67 off by him, and paid for by his receipt to the officer for the money due to the firm; this view of the case leads to the conclusion that out of $7,104 transferred to White he lost $2,916.69f, and $50; and, moreover, that he has lost his half of the value of the Poplar Creek lands. As to other mistakes stated at the bar, such as the two lots, negro woman, land warrants, and drove of cattle, these are not now taken into view, having not been stated in the bill; though, by and by, when the account shall be taken, they may properly be considered of.
The complaint in the bill respects insolvencies, receipts by the defendant, discharges from execution, concealment as to the Poplar Creek lands, and the bank bill of $50 ; that more debts were due than the defendant represented. It is not complained of that these debts were paid out of those transferred. And now the question occurs, ought the plaintiff to be relieved on account of his intoxication, or of the losses sustained in consequence of the defendant’s concealments ? First, as to his intoxication, we subscribe to the opinions delivered. 1 Ca. 202; 3 P. W. 130, in a note. If any advantage be taken of a man when drunk, or if he be brought into that situation by the contrivance or management of the person who obtains the contract, it is fraudulent, and the contract or advantage thus gained shall be taken from him. Here was a man, given to intoxication, called on to negotiate respecting a matter very important to him; liquor should have been withheld from him; it was put n his way, and kept in the room where he was doing his business. The business was not delayed till he could come to himself. * Thus situated he makes a contract by which he sustains a great loss, the gain accrues to the person who is negotiating with him, who has sent for him, and has taken no pains to keep him sober, but throws, during the whole time, intoxicating liquors in his way. All this is independent of the defendant’s acknowledgments, and, taken with them, leaves no doubt of the disadvantages the plaintiff labored under at the time. It is to be regretted that all bargains made with drunken men were not made void by the law. The danger to be apprehended from counterfeited drunkenness could not, probably, be as mischievous as that which is to be dreaded from imposition upon them in this situation. But the law is settled, and we cannot depart from it. As it is settled it discountenances and sets aside such a contract as this is. Here is an *68 unreasonable contract obtained from one in drink. Here is a contract obtained from one drawn in to drink by the person who deals with him. It is not considered that what has been done between the parties is a settlement. For then the account could not be opened, except as to items stated in the bill to be erroneous, and proved by the evidence to be so. It is to be considered as a purchase by one, of the interest of the other, upon a statement made for the purpose of showing what would be a proper allowance for that interest. In this case there are other ingredients besides those already mentioned, tending to show that this purchase ought to be invalidated. Suppression of the truth, or suggestion of that which is not so, ought to prevail in this court to set aside any conveyance, or transfer, or contract made under the influence of such suggestions or suppressions. Newland, 353. Here it was concealed that some of the transferred debts had been already received by Cox; and, also, he concealed the insolvency of debtors who owed a great part of these debts. There was a representation, as may be collected from the circumstances, that they were solvent, * when in all probability he knew they were otherwise. In such cases, when one party knows of all material circumstances, and the other not, he who is to gain by the contract from the other should state to him all the circumstances which, when known, might probably prevail with the loser to decline the bargain proposed.
Decree that the judgment obtained by the defendant shall stand a security for the sum which shall be found upon settlement to be justly due from the complainant, and that he shall receive of the judgment no more than that.
Let an account be taken of all the real and personal property which belonged to him on the 26th of November, 1808; also, of all debts then due to the firm which by proper diligence could have been collected; also, of all the debts due from the firm at that time. And let the balance be stated of all goods, debts, and property remaining due, over and above all such deductions, from which balance deduct a reasonable allowance for collection. Let it be stated what is the half of the balance remaining, from which half deduct all that has been paid by the complainant towards satisfaction of the two bonds given by him to the defendant. And let the balance of the one half then remaining be also stated. Let any other allowance proper to be made, to either party, according to the *69 articles of copartnership, be also stated. Each party to produce, on oath, before the clerk and master, all books and papers relative to these accounts which are in 1ns possession or power. And let each party be examined upon oath as to all items claimed by either party, when required by his adversary. His answer, also, to be made in writing.
See, as to concealment, White v. Cherry, 2 Tenn. 426; Harris v. Williamson, 4 Hay. 124; Perkins v. McGavock, Cooke, 415; Barnes v. Gregory, 1 Head, 230; George v. Johnson, 6 Hum. 36; Smith v. Cozurt, 2 Head, 526. As to drunkenness, Woodson v. Gordon, Peck, 196; Belcher v. Belcher, 10 Yer. 121; Birdsong v. Birdsong, 2 Head, 289; Hotchkiss v. Fortune, 7 Yer. 67; Morris v. Nixon, 7 Hum. 579; King’s Digest, 2232, 2284-91, 2289, 2296, 2401, 2411 8873.