ESTHER E. TAYLOR

*v.*

SIMON REID *et al.*

*Filed at Ottawa June 21, 1882.*

1. SALE UNDER TRUST DEED—*of the notice of sale—effect of making publication in advance of the time required.* Where a deed of trust requires thirty days' notice to be given previous to a sale, by publication once in each week for four successive weeks, a notice of the sale published the first time a few days more than thirty days prior to the sale, and continued in three other issues of the paper, weekly, is not invalid, but is a

substantial compliance with the power. It may be that a notice in such a case published a great length of time before the sale, would be no notice at all, though within the letter of the power.

2. Same—*of notice under statute—as to the first and last days of publication.* The provision of the statute relating to sales under powers in mortgages and deeds of trust, requiring at least thirty days' previous notice of a sale to be given, whether so specified in the power or not, and that such notice shall be given by publication, once in each week for four successive weeks, in some newspaper, etc., does not require that the last publication shall be at least thirty days before the sale, but it is sufficient that the first publication shall be at least thirty days before the sale, and the publication shall be continuous, as nearly as possible, in weekly newspapers, for thirty days prior to the sale.

3. Same—*and herein, of the evidence of the publication of notice of sale.* A certificate of the publisher of a weekly newspaper, that the notice of the sale of land under a trust deed, of which an annexed slip is a true copy, was published for four successive weeks, to-wit: four times in the "Chicago Legal News," a weekly secular newspaper, published every Saturday in, etc., and that the date of the first paper containing the same was the 9th day of November, A. D. 1878, and that the date of the last paper containing the same was the 30th day of November, 1878, the sale being advertised to take place on December 10, 1878, is a substantial compliance with the statute relating to such notices, and is sufficient evidence of the publication of the notice of the sale, which is required to be made on thirty days' prior notice, by publication for four successive weeks.

4. Same—*publication of notice in advertising pages of " Chicago Legal News."* A notice of sale under a trust deed was given on sheets of advertisements attached to the "Chicago Legal News," which sheets or pages were headed "Chicago Legal News," and were of the same size as the other pages of the paper, and folded and sent out to subscribers with and as a part of the "Legal News." The pages containing law or miscellaneous reading were numbered consecutively both at the top and bottom of the page, but the pages containing advertisements were numbered consecutively with the other pages at the bottom only, and in this respect, and in the fact that the entire page is filled with advertisements only, did these pages differ from the others: *Held,* that the pages of the paper containing legal notices were as much a part of the "Legal News" as any other part of the pages of that publication, and proof of these facts did not impair the evidence of due publication afforded by the publisher's certificate.

5. Same—*when retention of notes does not invalidate sale.* Where a sale is made of lots under a power in a deed of trust to the party holding the notes secured, and the amount of the sales credited on the notes, their retention by the payees, not as subsisting liabilities, but simply as a muniment of title, will not invalidate the sale, or give the former owner, the debtor, the right to redeem from the sale.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Bill was filed in the Circuit Court of Cook county, on the 23d of March, 1881, by Esther E. Taylor, against Simon Reid, Thomas Murdoch, Frederick Fischer, Anton Christianson Berg, and George S. Bullock, to redeem lots 2 and 4, in block 20, of Duncan's addition to Chicago, from a sale made under a deed of trust.

It is alleged in the bill that on the 27th of October, A. D. 1875, the complainant, with her husband, Douglas S. Taylor, borrowed of said Reid, Murdoch & Fischer, partners in business in Chicago under the firm name of "Reid, Murdoch & Fischer," the sum of $10,500, for which they gave their promissory note, payable three years after date, with interest at the rate of ten per cent per annum, payable semi-annually; that to secure the payment of such promissory note the complainant, together with her husband, conveyed lots 2 and 4, in block 20, in Duncan's addition to Chicago, in trust to L. C. Paine Freer, with power in him, in case of default, etc., on the application of the legal holder of said promissory note, after having given thirty days' previous notice, by publication once in each week, for four successive weeks, in the "Chicago Legal News," or some other newspaper at the time of sale published in the city of Chicago, to sell the said premises at a time specified in such notice, at the south-east corner of Adams and La Salle streets, in the city of Chicago, at public auction, to the highest bidder, for cash, etc.; that on or about the 1st of November, 1878, the said principal sum of $10,-500 being due, and the interest thereon, amounting to $525 due April 27, 1878, and $525 due October 27, 1878, being unpaid, said firm of Reid, Murdoch & Fischer, being the holder of such note and of notes given for such interest, caused to be prepared and published a notice signed by said Freer, as such trustee, that on the 10th day of December,

A. D. 1878, at the hour specified in said notice, at the south-east corner of La Salle and Adams streets, he would sell the said premises under and by virtue of such power, and for the purposes aforesaid; that afterwards, and before the 10th of December, 1878, complainant applied to said Reid, Murdoch & Fischer, to desist from such sale, and to allow complainant forbearance on the said debt, and said Reid, Murdoch & Fischer assured complainant that the sale would not make any difference, for all they wanted was their money, and they would take that at any time, after sale as well as before—that there would be no bidders at the sale advertised, and they would have said lands struck off and conveyed to themselves, and would thereafter hold the same, as before, as security for said debt, and would at any time accept said debt and interest, and that it would not make any difference about such sale—complainant could redeem the property after the sale just as well as before. It is further alleged that complainant, relying on and being thrown off her guard by such assurances, did not sacrifice other property to raise money, as she could have done, to redeem said lots before the time fixed for such sale, nor did she attempt to procure bidders to bid at such sale and buy said lands for their value, though said lands were worth much more than the said sum secured thereon. And it is further alleged that said sale coming on, there were no bidders, but said Reid, Murdoch & Fischer caused said lots to be entered as sold to Thomas Murdoch, one of the members of said firm, for $5919 each, and caused said Freer to execute a deed for the same to him, etc.

It is charged that the notice was not published, as recited in the trustee's deed to Murdoch, for four successive weeks in the "Chicago Legal News," but for at least two of said weeks it was not published in said "Legal News," nor in any other newspaper; that the holder of said notes had no authority or right to become a purchaser at a sale made under and by virtue of the powers aforesaid; that on or about the 2d day

of October, A. D. 1879, Reid, Murdoch & Fischer pretended to sell and convey unto Anton Christianson Berg the north half of said lot 4, by warranty deed, for the consideration of $3750, and, on the same day, they also pretended to sell and convey unto George Bullock the south half of said lot, for a like consideration of $3750; and it is also further charged that each of the defendants has acknowledged the right of the complainant to redeem said premises until within the then last sixty days. The prayer of the bill is, that the complainant be let in to redeem.

The answers admit the borrowing of the money, execution of note and deed of trust, sale under deed of trust, execution of deed of trustee, and sale and conveyance to Berg and Bullock, as alleged, but deny that there was ever any agreement that complainant be allowed to redeem, that the notice was insufficient, but, on the contrary, allege and claim that the sale was, in all respects, regular and legal. The material allegations are all put in issue, and the defendants set up and rely, also, upon the *laches* of the complainant in prosecuting her suit.

On hearing, the court below decreed that the bill be dismissed. From that decree complainant appeals to this court, and assigns for error—

*First*—The Circuit Court erred in dismissing said bill.

*Second*—The court rejected evidence offered by plaintiff that ought to have been received.

*Third*—The court received evidence offered by defendant that ought to have been rejected.

*Fourth*—The court ought to have granted to the plaintiff relief according to the prayer of her bill.

Mr. EDWARD ROBY, for the appellant:

The notice, if published as recited in the trustee's deed, was insufficient. The trustee's deed was void for defect of power, and this appears in the deed itself.

The trust deed required thirty days' prior notice of the sale, while the notice was for more than thirty days before. Power to sell on thirty days' notice can not be exercised on sixty or ninety days' or a year's notice. *Stine* v. *Wilkeson,* 10 Mo. 96; *Kellogg* v. *Garrico,* 47 id. 159.

Power to sell on thirty days' notice, by publication in a newspaper, requires a publication in every issue of the paper for that period. *Stine* v. *Wilkeson,* 10 Mo. 96; *Armstrong* v. *Scott,* 4 G. Greene, 433.

The statute (Rev. Stat. chap 95, sec. 14,) requires at least thirty days' previous notice of such sales by publication in four weekly issues of some newspaper. This notice was not given until the publication was complete. *Burton* v. *Chicago,* 53 Ill. 87; *Chicago* v. *Vulcan Iron Works,* 93 id. 222.

The provision of the statute is not that the trustee shall begin to give the notice thirty days before sale. It means that the four weeks' publication must be completed before the sale. As to when notice is complete, see *Thormeyer* v. *Sisson,* 83 Ill. 188; *Scammon* v. *Chicago,* 40 id. 146; *Randall* v. *Sanger,* 16 id. 27; *Haywood* v. *McCrary,* 33 id. 459; *Vairin* v. *Edmonson,* 5 Gilm. 270.

No *laches* can be imputed because her notes were kept outstanding, and the keeping of such notes against appellant is evidence that the debt is still outstanding, and the title, though absolute on its face, is still in mortgage. *Enner* v. *Thompson,* 46 Ill. 223; *Sutphen* v. *Cushman,* 35 id. 196.

Mr. FRANK J. CRAWFORD, for the appellees:

Appellant's counsel assumes two propositions: first, that the notice was given too long before the sale; and second, that the notice was not given long enough before the sale. The first is based upon the provisions in the deed of trust, and the second on the statute.

The authorities cited have no application here, as, if the trust deed was made prior to the time the statute was in

force, July 1, 1874, and had simply required twenty days' notice, one notice published twenty days previous to the sale would have been sufficient. *Wild et al.* v. *Rees,* 48 Ill. 428; *Cushman* v. *Stone et al.* 69 id. 520; *St. Joseph's Manf. Co.* v. *Daggett,* 84 id. 559.

A longer notice than is required, by a few days, can work no injury, but is calculated to work to the debtor's benefit. *Tooke et al.* v. *Newman et al.* 75 Ill. 219; *Beal* v. *Blair et al.* 33 Iowa, 313. See, also, *Atkinson* v. *Duffy,* 16 Minn. 48.

When a statute requires three weeks' notice to be given before court, it does not require that three weeks shall intervene between the third publication and the session of the court. *Fry* v. *Bidwell,* 74 Ill. 381.

The publisher's certificate, which in all respects conformed to the requirements of the law, sufficiently proved that the notice was duly published. That, under the statute, was sufficient evidence thereof. Rev. Stat. chap. 100, sec. 1.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first objection taken by counsel, in argument, to the decree below, is, "the notice, if published as recited in the trustee's deed, was insufficient; the trustee's deed was consequently void for defect of power, and this appears in the deed itself."

The proof of the notice published, as recited in the decree, was, that "on the 9th day of November, A. D. 1878, the trustee caused due notice to be published in the 'Chicago Legal News,' a newspaper published in the said city of Chicago, that said premises hereinafter described would, on the 10th day of December, A. D. 1878, at the hour of 10 o'clock in the forenoon of said day, be sold at public auction, at the south-east corner of Adams and La Salle streets, in said city of Chicago, in said county of Cook, to the highest bidder, for cash, by virtue of the power and authority in him vested by said trust deed, which said notice was duly published once a

week for four successive weeks, to-wit: four times in the said 'Chicago Legal News,' and that the date of the first paper containing the same was the 9th day of November, A. D. 1878, and of the last the 30th day of November, A. D. 1878," etc. The power in the deed of trust required that the premises should be sold at public auction, for the highest and best price, etc., "thirty days' previous notice of such sale having been given, by publication, once in each week for four successive weeks, in the 'Chicago Legal News,' or in any newspaper at that time published in Chicago."

The first ground of objection discussed is, under this power no latitude is given the trustee,—the notice must be published precisely thirty days before the day of sale. This is not tenable. The power does not require that the notice shall be published, for the first time, thirty days previous to the day of sale, but simply that there shall be thirty days' previous notice, etc. It may be conceded that the publication of a notice a great length of time before the day of sale, although strictly within the letter would not be within the spirit of the power, and would be no notice in fact; but that case is not now before us. The sale here was on the 10th of December, and the last publication on the 30th of November,—a reasonable time enough for all purposes of notice.

In *Tooke et ux.* v. *Newman et al.* 75 Ill. 219, to a like objection there urged, it was replied: "The claim that the notice is insufficient is extremely technical, and without force or merit. The deed of trust required that there should be published a notice of sale for five consecutive days, the last of which should be ten days before that fixed for the sale. The deed does not state the last insertion of the notice shall be ten days, and no more, before the sale. Had there been but nine days, then it would have been insufficient, because the longer the notice, within reasonable limits, the greater the number of persons who will see it, and the larger the chances

for an enhanced price that may be had for the property. Hence the law gives to the debtor the full benefit of the stipulated notice, and prevents the creditor from abridging the time, and thus injuring his debtor.    But a longer notice than is required, by a few days, can work no injury, but is calculated to operate to his benefit." In principle that case and the present, in respect of the point under consideration, are entirely analogous.

In *Beal* v. *Blair et al.* 33 Iowa, 318, where it was provided sale might be made upon giving thirty days' notice thereof, it was held the time of sale was not limited thereby to the day immediately succeeding the expiration of the thirty days.

We have carefully examined the cases referred to by counsel for appellant, and we deem them inapplicable.    The *dictum* in *Armstrong* v. *Scott*, 3 G. Greene, 433, relied upon, was subsequently overruled by the same court in *Lefler* v. *Armstrong*, 4 Iowa, 487.

The next ground of objection urged is this:   It is provided by section 14, chap. 95, Rev. Stat. 1874, that "in all sales of real estate under a mortgage, or trust deed in the nature of a mortgage, executed after the taking effect of this act, which may be made pursuant to a power of sale, at least thirty days' previous notice of such intended sale shall be given, whether so specified in the power of sale or not. * * * The notice shall be given by publication, once in each week for four successive weeks, in some newspaper or other paper authorized by law to publish legal notices, published in the county or counties where the premises are situated, or if no paper is published in such county, the nearest newspaper published in this State; but in no case shall a notice be given for a shorter time than is required by the mortgage or deed of trust," and the contention is, this requires that the last publication shall be at least thirty days before the sale. But this, in our opinion, is neither in accordance with the letter nor the spirit of the statute.    "At least thirty days'

previous notice shall be given," says the statute, and this is fully answered by one publication—the first—at least thirty days before the sale. This ends the direction as to *when* the notice shall be published, and then follows the direction *how long* it shall be published, namely, "once in each week, for four successive weeks." Thus there is required a continuous publication, as nearly as is possible by weekly newspapers, for thirty days prior to the sale. Had it been designed the last publication must be at least thirty days prior to the sale, we must presume it would have been so enacted, and as it was not so enacted it can not be held to be the law. *Fry* v. *Bidwell,* 74 Ill. 381.

The next point urged is, that there was in fact no publication as recited in the decree. It is provided by sec. 1, chap. 100, Rev. Stat. 1874, "that when any notice shall be required by law, or the order of the court, or any contract, to be published in any newspaper, and no other mode of proving the same is provided, the certificate of the publisher, * * * with a written or printed copy of the notice annexed, stating the number of times which the same shall have been published, and the dates of the first and last papers containing the same, shall be sufficient evidence of the publication therein set forth." Accompanying and annexed to the notice here, is a certificate of the publisher of the "Chicago Legal News" that the notice, "of which the annexed printed slip is a true copy, was published for four successive weeks, to-wit, four times in the 'Chicago Legal News,' a weekly secular newspaper, published every Saturday in the city of Chicago, county of Cook, and State of Illinois, * * * and that the date of the first paper containing the same was the 9th day of November, A. D. 1878, and that the date of the last paper containing the same was the 30th day of November, 1878." This we regard as a full compliance with the section of the statute quoted, and a complete protection to third parties acquiring rights under the sale; but since, as to one lot,

the *cestuis que trust* under the deed of trust are claimants, it is, perhaps, necessary to go farther, and inquire whether appellant has successfully impeached this certificate.

Appellant claims to have impeached the certificate by proof that the pages on which the notice was published were not, in fact, a part of the "Legal News," though folded with and circulated with it. The substance of the proof is, a large number of advertisements are published in the "Legal News," and upon some of the pages on which this notice was published there was nothing but advertisements. These pages were, as the others, however, headed "Chicago Legal News;" they were of the same size as the other pages, and folded and sent out to subscribers with and as a part of the "Legal News." The pages containing law or miscellaneous reading are numbered consecutively, both at the top and the bottom of the page, but the pages containing nothing but advertisements are numbered consecutively with the other pages at the bottom of the page only, and in this respect, and in the fact that the entire page is filled with advertisements, do these pages differ from the others. We can not think the omission of the paging at the top a circumstance of any importance. It in nowise affects the question of notice, and is a mere matter of convenience in making reference, which is as effectually promoted by the paging at the bottom. The law does not require, nor does the deed of trust require, the notice shall be published on a page containing law reading or miscellaneous reading. The pages containing legal notices seem to us to be just as much a part of the "Legal News" as any other of the pages of that publication. We do not think the certificate is at all impaired by the evidence.

Another objection urged by counsel for appellant against the decree below is, there was "no auction, no bidding." This is not sustained by the evidence. Freer, the trustee, testifies that he offered the property for sale at public auction; that one of the lots was first bid off by a gentleman

whose name he does not recall, and the other was then bid
off by Murdoch; that the gentleman bidding off the first lot
claimed to have been laboring under a mistake, and in con-
sequence refused to take the lot. He then says: "It is my
impression * * * that I went on then and re-offered the
first piece of property." And he subsequently states that
"Murdoch became the purchaser of it also." We do not
think Freer's evidence on this point successfully contradicted.

The objection that no money was paid by Murdoch at the
time of the sale, is untenable. It was sufficient that the
amount bid was credited upon the note. *Jacobs* v. *Turpin,*
83 Ill. 424.

*Steumbaugh* v. *Hallam,* 48 Ill. 305, *Sutphen* v. *Cushman et al.*
35 id. 186, and *Ennor* v. *Thompson,* 46 id. 214, referred to
by counsel for appellant, are not in point. In those cases
the notes were held by the payees as subsisting evidence of
indebtedness, while here they are retained simply as muni-
ments of a title derived by virtue of a sale resulting in their
satisfaction. Doubtless, being satisfied, the maker is entitled
to their possession. (*In re Costar,* 2 Johns. Ch. 503.) But
their possession by the payees, under the circumstances here
proved, does not rebut the idea that there was a sale of the
property under the power in the deed of trust.

But counsel insist, as a final and conclusive objection to
the decree below, that the equities are such as to preserve
the right of redemption, notwithstanding the sale, and, under
this head, they contend there was an agreement between
appellant and Murdoch, Reid & Fischer, whereby they agreed
she should be allowed to redeem, notwithstanding the sale.
Appellant testified: "On learning that the property * * *
had been advertised for sale, for foreclosure, Col. Roberts
went with me immediately to see Messrs. Reid, Murdoch &
Fischer. We saw Mr. Murdoch and one other gentleman, I
don't know whether it was Mr. Reid or Mr. Fischer, and
asked them to give me a little more time, as it was the first

I had heard of it, and they told me if I would bring them the amount of the interest then due they would withdraw, and I could make a new loan at a lower rate of interest; but I told them the time was so short, it was too short then for me to raise the money. It was then the 7th or 8th, and the sale was the 10th of December. They told me that the sale then would have to go on, but that I could redeem the property at any time. Mr. Murdoch stated to me that the sale would have to go on, but that I could redeem the property. * * * After he stated to me that I could redeem the property at any time, I left then, feeling very easy, and never thought any more about it for some time." She shows that at this time she had with her her attorney, R. Biddle Roberts, who heard the whole conversation, and his recollection fails to sustain her. Among other things he testified: "They (*i. e.*, Murdoch, Reid & Fischer,) stated that they only wanted to get back their loan. I think that Mr. Reid said that the money was not theirs; that they were only acting for other parties, and that they must get back the loan. Mrs. Taylor was unable to give them a distinct assurance as to when she would make a payment, and we parted, as I recollect, they agreeing to postpone the sale if certain payments were made, and stating that all they wanted was their money." On cross-examination he says this payment was to be made at some time prior to the time the sale was to take place.

The husband of appellant corroborates her, in his testimony, to some extent. He testifies, that after the sale was made Murdoch told him that he (Murdoch) would be very glad to take the money at any time; that he was loaning money; wanted his money and interest, and not property. But this is emphatically denied by Murdoch, and he also denies that any agreement was made whereby appellant should be allowed to redeem after the sale. His testimony is fully corroborated by that of Reid. They admit they agreed

to postpone the sale if the interest due should be paid before the day fixed for the sale, but deny that any right of redemption after the sale was recognized.

We can not say the court below erred in finding the alleged agreement to allow redemption after the sale not proved by the evidence. If such an agreement had been made, it would have been strange indeed if it had no limitations, and yet appellant's testimony fixes no time within which redemption was to have been effected. It does not, from her testimony, appear that she undertook to redeem at all. She was simply allowed the privilege to do so, indefinitely. Such an agreement, if made, would have been void for want of mutuality. It is most singular that business men should enter into such an agreement. Why have a sale, if no title could pass?

Some minor objections are urged, which we deem untenable, and not of sufficient importance to specifically notice.

On the whole, we are unable to say there is such error in the record as would warrant us in reversing the decree below. It will, therefore, be affirmed.

*Decree affirmed.*