SARAH E. TAGGART

*v.*

CHAUNCEY J. BLAIR *et al.*

*Opinion filed April 17, 1905—Rehearing denied June 7, 1905.*

1. MORTGAGES—*evidence of agreement to extend time of redemption must be clear.* A mortgagee may, by contract, even though a verbal one, extend the period allowed by law for redemption, and equity will enforce such agreement; but the evidence of the extension agreement must be clear or the period for redemption fixed by law must control.

2. EVIDENCE—*what does not show agreement to extend period of redemption.* Evidence tending to show that the purchaser at a foreclosure sale agreed, some five months before the expiration of the period for redemption, to allow the mortgagee a "reasonable" time to raise the money to redeem, does not establish an agreement to extend the period of redemption fixed by law, there being no element of estoppel arising out of the agreement.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

This is a bill, filed on January 14, 1902, by the plaintiff in error against Chauncey J. Blair, and John C. Neely, trustee, to redeem certain premises from a foreclosure sale, in pursuance of an alleged verbal agreement for the extension of the time of redemption. Answers were filed by the defendants in error denying the existence of any agreement for redemption. The cause was referred to a master in chancery, who took testimony, and reported the same back with his conclusions. One deposition was taken beyond the limits of the State, and considered by the master in making his report. The master, after reviewing the evidence, made a report, finding that the allegations of the bill had not been proven by a preponderance of the evidence, and recommending that the bill be dismissed for want of equity at the cost of plaintiff in error. Objections were filed to the master's report, which were overruled by the master, and ordered to

stand as exceptions to the report. Upon the hearing of the cause, the court overruled the exceptions to the master's report and confirmed the same, and dismissed the bill of complaint for want of equity at complainant's costs. The present writ of error is sued out for the purpose of reviewing said decree.

Some of the material facts in the original foreclosure suit are as follows:

On February 1, 1896, plaintiff in error, Sarah E. Taggart, was indebted to defendant in error, Blair, and on that date executed with her husband, Robert H. Taggart, a note for $33,000.00 due five years after date, and delivered the same to Blair, and to secure said note, she, with her husband, executed to the defendant in error, John C. Neely, as trustee, a trust deed, dated February 11, 1896, conveying certain premises in Chicago, known as 6248, 6250 and 6252 Drexel avenue. On February 17, 1899, Blair and Neely filed their bill to foreclose said trust deed against plaintiff in error and her husband, default having been made in the payment of the interest on the note from August 1, 1897, to February 1, 1898, and in the payment of two subsequent installments of interest, covering the period from February 1, 1898, to February 1, 1899; and also default was made in the payment of taxes for the year 1897; and the premises were sold for taxes in 1898. Decree of sale was entered in the foreclosure suit, and the premises were sold by the master on June 8, 1899, at public auction to defendant in error, Blair, for the sum of $37,300.00, and a certificate of purchase was delivered to Blair. The sale was made in pursuance of a decree of foreclosure, entered on May 11, 1899. On June 13, 1899, the master filed his report of sale, showing a deficiency of $290.90 remaining due to Blair, and thereupon a decree was entered for the amount of the deficiency. The fifteen months, allowed for redemption, expired on September 9, 1900, and about that time Mr. Blair received a master's deed to the property.

On April 21, 1899, on the motion of Blair, the court appointed one Edwin J. Fleming, Blair's private secretary, to act as receiver for the premises, and the receivership was con-. tinued after the approval of the sale. On January 26, 1900, plaintiff in error filed her petition, alleging that Fleming, as receiver, had collected $2314.75 of rents from the premises, and offering to pay Blair $299.90 in full of the amount due upon the deficiency decree, and asked for the possession of the premises. This application to discharge the receiver was resisted by Blair, but on February 5, 1900, upon a hearing of the petition, it was ordered that Blair satisfy the deficiency decree upon the payment to him of $300.08, and that the receiver surrender to plaintiff in error the possession of the premises. Blair took an appeal from this order, and the Appellate Court dismissed his appeal.

JOHN C. WILSON, and JACOB C. LEBOSKY, (CHARLES K. LADD, and WILLIAM PRENTISS, of counsel,) for plaintiff in error.

WILSON, MOORE & McILVAINE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is claimed on the part of the plaintiff in error, that, before the time of redemption from the master's sale had expired, the defendant in error, Blair, agreed that, at any time after the sale by the master, plaintiff in error should have the right upon paying the amount due and secured by the trust deed, with costs and interest, to redeem the premises from the sale, and that, upon the payment of the amount so due, Blair would release the trust deed. The question, presented by the record, is purely a question of fact, and that is, whether any agreement to extend the time of redemption was made, or not.

Robert H. Taggart, the husband of plaintiff in error, swears that, on or about December, 1899, he went in com-

pany with a man, named Joseph C. Davidson, to the Merchants' National Bank, of which Blair was president, and there had an interview, in which Blair is stated to have agreed, that he would accept the amount due by the terms of the decree, and cancel the trust deed, at any time after the sale, or within a reasonable time after the sale. Taggart is confirmed in his statement in regard to the agreement by the testimony of Joseph C. Davidson. The testimony shows that Davidson was asked to accompany Taggart for the purpose of being a witness to what might be said by Blair. The testimony of the two witnesses, Taggart and Davidson, is all the evidence, introduced by plaintiff in error in support of the alleged agreement. On the other hand, Blair swears most positively that he never made any agreement to extend the time of redemption, or to allow the plaintiff in error to pay the amount of the debt after the expiration of the statutory period of redemption. Blair is confirmed in his testimony by that of Edwin J. Fleming, his private secretary, and the receiver of the property in question. Blair, at the time of the alleged interview, was sitting at his desk in the bank. Taggart and Davidson were standing at the railing or counter, and Fleming swears that he was standing at the desk near Blair, and heard the conversation.

It thus appears that two witnesses, Taggart and Davidson, swear to the agreement, and two witnesses, to-wit, Blair and Fleming, swear that no such agreement was made. Blair and Taggart were both interested parties, but Davidson and Fleming had no pecuniary interest in the matter. None of these four witnesses were impeached. Upon this state of the evidence the master found that the agreement to extend the time of redemption was not sustained by the preponderance of the evidence, and the chancellor below confirmed the report of the master, making this finding. After a careful examination of the evidence we are not able to say that the decree of the court below was not correct. It cannot be said that the finding is contrary to the weight of the evidence.

No fault can be found with the law, as contended for by plaintiff in error. A mortgagee may by contract extend the period allowed by law for redemption, and a court of equity will enforce such agreement. (*Union Mutual Life Ins. Co.* v. *Kirchoff,* 133 Ill. 368; *Schoonhoven* v. *Pratt,* 25 id. 379; *Pensoneau* v. *Pulliam,* 47 id. 58). And this is the rule, even where the agreement for such extension of the time of redemption is a verbal one. (*Union Mutual Life Ins. Co.* v. *White,* 106 Ill. 67; *Reigard* v. *McNeil,* 38 id. 400; *Pensoneau* v. *Pulliam, supra*). Here, however, under the law as thus existing and as thus contended for by the plaintiff in error, the question is whether Blair agreed or promised to do what he is alleged to have agreed or promised.

There are many circumstances, which confirm the testimony of Blair and Fleming. The testimony of the witnesses for plaintiff in error is somewhat indefinite in its character. It is left uncertain by the statements of such witnesses whether, in case Blair did make such an agreement, the time of the extension was to begin in December, 1899, at the time of the alleged interview, or on June 8, 1900, when the twelve months, allowed to the mortgagor debtor for redemption, was to expire, or on September 8, 1900, when the additional three months, allowed to judgment creditors, was to expire. The testimony is somewhat indefinite, also, as to the time when the redemption was to be made. The bill alleges that it was to be made at any time after the sale when the plaintiff in error should make tender of the amount due, while the evidence, introduced by the plaintiff in error, is to the effect that, by the alleged agreement, she was to have a reasonable time after the sale, within which the premises were to be redeemed. At the time of the alleged interview in December, 1899, more than five months yet remained before plaintiff in error's time of redemption expired, and more than eight months yet remained before the fifteen months, allowed by the statute, would expire. It is probable that what Blair said, if he said any such thing as he is charged by the plain-

tiff in error with having said, referred to his willingness to receive the money, if paid within the period remaining before the period of redemption should expire.

The testimony of plaintiff in error tends to show that her husband and Davidson went into the bank without any previous notice to Blair, and had a brief interview with him, in which he promised to accept his money at any time when it should be paid, although plaintiff in error had been in default in the payment of three installments of interest and in the payment of taxes, and had allowed the property to be sold for taxes, and had been collecting the rents of the property, amounting to some $400.00 per month, and was then in possession of the property. It appears that Taggart did not tell his wife, the owner of the property, of the promise of Blair to extend the time of redemption, nor did Taggart tell his attorney, Mr. Lee, who was trying to raise money to pay off the mortgage, that Blair had made any such promise. Plaintiff in error, testifying as to what her husband told her, says: "Mr. Blair said that he did not want the property, that he wanted the money, and I told Mr. Taggart to go and get Mr. Blair the money, which I knew he could." It appears also from the evidence that Blair had opposed the discharge of the receiver in the case upon the payment of the deficiency decree, and there had been an appeal to the Appellate Court from the order of the trial court in reference to this matter. The testimony tends to show that Blair resisted the application to discharge the receiver, upon the ground that, while Taggart was in possession, he had suffered the buildings to become out of repair, and the property to be sold for taxes. In view of this state of things, it seems hardly credible that Blair would consent to make the agreement, which is alleged to have been made. Again, after September 8, 1900, when the statutory period of redemption had expired, Taggart surrendered possession of the premises to Blair, apparently without objection. The owner of an equity of redemption is entitled to the rents of the premises up to the time the period

of redemption expires, and yet Taggart made no attempt to assert his right, or his wife's right, to the rents prior to September 8, 1900, but on that date, or thereabouts, surrendered possession.

Most of the cases, referred to by plaintiff in error, where courts have enforced a verbal arrangement for the extension of the period of redemption, have been cases where the owner of the equity of redemption has been fraudulently induced to rely upon the representations of the creditor, and has been so lulled to sleep, as to allow the period of redemption to expire without making an effort to redeem. No feature of this kind is presented by the testimony in this case. There is no claim that plaintiff in error was deceived, or induced by any trick or device, to allow the time of redemption to pass. It appears from the testimony that Blair was told that arrangements had been, or were soon to be made to redeem, and that money would be raised to effect such redemption. Taggart in his testimony, says: "I told him I was afraid I might have a little trouble in getting the money, as the foreclosure proceedings might give me some trouble. * * * I wanted to know if he would extend the time, give me an extension after the 8th of June, 1900; I says: 'I may have trouble in raising this amount of money.'" He swears that he was making efforts to raise money to pay off the loan at the time he saw Blair. Davidson testified that Blair was assured by Taggart "that the money would be gotten." All this tends to show that the plaintiff in error was not induced to relax her efforts to redeem, or to permit the time of redemption to expire, on account of any reliance upon Blair's promise. On the contrary, efforts to raise the money for the purpose of redeeming seem to have been made exactly as though there had been no promise of any kind. It is not claimed that there was any consideration for this promise or agreement.

In *Taylor v. Reid,* 103 Ill. 349, where a bill was filed by Esther E. Taylor to redeem from a foreclosure sale by Reid, Murdoch & Fischer, Mrs. Taylor testified: "Mr. Murdoch

stated to me that the sale would have to go on, but that I could redeem the property. After he stated to me that I could redeem the property at any time, I left them, feeling very easy, and never thought any more about it for some time." Her husband testified that Murdoch told him that he, Murdoch, would be very glad to get the money at any time; that he was loaning money, and wanted his money and interest, and not the property. This testimony was denied by Reid and Murdoch, and the bill was dismissed for want of equity. In that case this court held that the decree below was right, and said (p. 362): "We cannot say the court below erred in finding the alleged agreement to allow redemption after the sale not proved by the evidence. If such an agreement had been made, it would have been strange indeed, if it had no limitations, and yet appellant's testimony fixes no time within which redemption was to have been effected. It does not, from her testimony, appear that she undertook to redeem at all. She was simply allowed the privilege to do so, indefinitely. Such an agreement, if made, would have been void for want of mutuality. It is most singular that business men should enter into such an agreement." In the case at bar, it is alleged in the bill that plaintiff in error was given the right to redeem at any time, and thus a contract is set up, which is similar to the one in the case of *Taylor* v. *Reid, supra.*

In *Hart* v. *Seymour,* 147 Ill. 598, it appeared from the testimony that the complainants had been assured by the representatives of the mortgagee that all the mortgagee cared for was to hold the security, and that at any time the debt could be paid; that they did not want the property but their money, and that, when Mrs. Bishop could make a sale or raise the money to pay the indebtedness, she could have her property back as they did not want it; the parties alleged to have made these representations denied them, and one of the witnesses testified, "that he probably told another representative of Mrs. Bishop that what the company wanted was its

money; that it did not want the property particularly, and that witness was willing to give them fair time for taking up the property and paying for it, but there was no promise of a definite character made;" and it was there held that an agreement for redemption was not established, and the following language is used by the court (p. 619): "But even if we should accept the evidence given on the part of the complainants as true, it wholly fails to prove any binding contract extending Mrs. Bishop's right to redeem beyond the statutory period. And the evidence fails to show that the assurances thus given were ever relied or acted upon by her, or that she was thereby induced to alter her position, so as to call into operation the doctrine of estoppel."

In the case at bar, the testimony, introduced by the plaintiff in error, is to the effect that Blair promised to allow a reasonable time after June 8, 1900, for the redemption of the property. In *Hart* v. *Seymour, supra,* the testimony was to the effect that "a fair time" was to be allowed for redeeming the property, and we see no difference between a reasonable time and a fair time, so that if the testimony of the witnesses of plaintiff in error be true, the doctrine of *Hart* v. *Seymour, supra,* is precisely applicable here. Just what was meant by a reasonable time, if there was any promise to grant a reasonable time, does not appear; but as the testimony shows that plaintiff in error and her attorneys and agents were trying to raise the money for the purpose of redemption, and as Blair was told that they were in a fair way to raise such money, it cannot be presumed that there could have been any agreement for an extension of time beyond the unexpired portion of the statutory time of redemption.

The testimony in the case tends to show that the property was worth $59,000.00, and that the debt secured upon it was between $37,000.00 and $38,000.00, thus involving a loss to the plaintiff in error of over $20,000.00. This is indeed a hardship, and such a condition of affairs is to be regretted. But the law has fixed the time, within which a

debtor is allowed to redeem property from a judgment or foreclosure sale, and where the evidence is not clear that there has been any agreement to extend the time of redemption, it is our duty to let the law take its course.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*