## J. H. POPE v. HENRY CRAFT, Trustee, et al.

Western Section.   July 29, 1925.

Certiorari denied by Supreme Court, December 12, 1925.

1. **Mortgages.   Notice of sale.   Rule for computing time.**
    In an action to set aside a sale under deed of trust because the land was not advertised the required time, held in computing the time of notice required in a deed of trust the first day of publication of the notice should be excluded and the last day included.

2. **Mortgages.   Notice of sale.   If first day of notice excluded sale may be made on last day of required notice.**
    Where deed of trust provided for 21 days notice of sale, and notice was first published on November 12th and land sold on December 3rd, held sufficient notice.

3. **Mortgages.   Publication of notice.   Newspaper.**
    A daily publication which contains lists of building permits, death and birth notices, record of marriage licenses, stock markets, court dockets, items of public interest and advertisements, and having a circulation of about 3000, held a newspaper in the sense required by law and by the deed of trust directing the publication of the notice of sale.

4. **Deeds.   Champertous deed.   A deed given to property which another is in possession of and claiming adversely is champertous and does not pass title.**
    A sale of lands held by the endor under a perfect title but in the adverse possession of another at the time was a sale of a pretended title within the statute making such sales null and void as champertous without regard to the duration of such possession.

5. **Ejectment.** Where a conveyance is void for champerty, the title re-
mains in the grantor and he may maintain a bill of ejectment in equity
for possession.
> The grantor may maintain his suit to recover possession without
specially pleading the invalidity of a deed.

6. **Adverse possession. Holding over after deed of trust is foreclosed.**
> Where party buys real estate subject to a mortgage and it is later sold
out under the mortgage and he holds over, claiming that mortgage is not
legally foreclosed, held to hold adversely to purchaser at trustee's sale.

Appeal from Part I, Chancery Court, Shelby County, Hon. F. H.
Heiskell, Chancellor.

Affirmed and remanded.

John Johnston, of Memphis, for appellant.

Henry Craft, of Memphis, for appellees.

CLARK, J. The complainant, J. H. Pope, purchased a house
and lot, known in the record as the "Home Place," from Colyar
Reese, and located at the corner of Union Avenue and Bellevue in
Memphis, Tennessee. For said property he agreed to pay $46,000.
He paid $10,000 cash and assumed the payment of three notes, each
in the sum of $11,666.66, one of which notes was due February
18, 1921, one February 18, 1922 and the other February 18, 1923.
Said notes were executed by Colyar Reese and were secured by a deed
of trust on said property made to H. J. Frame and W. D. Kyser,
trustees. The North Memphis Savings Bank purchased and be-
came the owner of said notes. Thereafter, said North Memphis
Savings Bank consolidated with or sold all of its assets to the
Union & Planters Bank & Trust Company.

Said notes were not paid when they became due. Said house and
lot, the home place, was advertised and sold by W. D. Kyser, one
of the trustees. The Union & Planters Bank and Trust Company
became the purchaser at the price of $20,000. Thereafter said
bank sold, or undertook to sell, said property to the Methodist
Hospital and made and delivered a deed to it.

The bill in this case was filed by J. H. Pope, as complainant,
against Henry Craft, Trustee, North Memphis Savings Bank,
Union & Planters Bank & Trust Co., John T. Walsh, President,
and also against the Methodist Hospital, as defendants. Complain-
ant in his bill attacked and sought to have set aside various trans-
actions had by him with one or all of the defendants, but the only
matter involved on this appeal is that which pertains to the home
place.

Complainant charged that the North Memphis Savings Bank
had agreed to carry said Colvar Reese notes for him (complainant)
for several years longer than it did carry them, and not to sell
said home place until complainant had had further and additional

opportunity to pay for same. He also charged that said home place was worth $75,000, that he was offered $60,000 for it by the said Methodist Hospital before said deed of trust was foreclosed, that he asked the hospital $75,000 for it and would have been able to sell said place for last-mentioned amount had not said deed of trust been foreclosed, that said North Memphis Savings Bank or its successor, the Union & Planters Bank & Trust Company, colluded with the Methodist Hospital and agreed to have said deed of trust foreclosed, to buy said property for $20,000, and to let the hospital have it for $50,000, being $10,000 less than said hospital had offered for it, and that said Union & Planters Bank carried out and performed its said collusive agreement.

Complainant further charges that said home place was not advertised as by said deed of trust required, in that the length of the advertisement actually made was only twenty days, while the requirement was that said property should be advertised for a period of not less than twenty-one days; also that the requirement of the deed of trust was that said property be advertised in a newspaper, but the purported advertisement was inserted in "The Daily News," and that said Daily News was not and is not a newspaper, as that term was and is used in said deed of trust. Complainant further charged that, since the Union & Planters Bank & Trust Co., had conveyed the property to the Methodist Hospital, it was not entitled to maintain suit in its name (Union & Planters Bank & Trust Co.) to recover possession of the property.

The Methodist Hospital did not answer, and an order pro confesso was taken against it. The other defendants answered. The Union & Planters Bank denied in its answer that complainant was entitled to any of the relief sought with reference to the home place, denied all of the material charges contained in the original and amended bill, and filed its answer as a cross-bill, charging that it had purchased said property at the trustee's sale, that it had paid for same by crediting the amount bid by it on the indebtedness owing to it by complainant, that the trustee had executed and delivered to it a deed, in proper form, conveying said property to it, that said deed had been duly recorded, that complainant was still in the possession of the property, but that cross-complainant was entitled to the possession of it, and the chancellor was asked to so decree.

Proof was taken, the case was tried before chancellor Heiskell and he was of opinion and decreed that complainant was not entitled to any of the relief sought with reference to said home place, and with reference to it complainant's bill was dismissed; but that said cross-complainant was entitled to the relief sought with reference to said home place in its cross-bill, and it was so decreed.

From so much of the decree as held that the Union & Planters Bank & Trust Company had, by its purchase at the trustees sale and the deed of the trustee, acquired a valid title to said home place and was entitled to maintain its suit to recover possession of it, and as decreed a writ of possession to said cross-complainant, the original complainant, J. H. Pope, perfected an appeal to this court, and has filed the following assignments of error:

## I.

"The court erred in decreeing·that the sale of this property by W. D. Kyser, trustee, on December 3, 1923, was·a valid sale, and passed title to said property to the Union & Planters Bank & Trust Company.

"First: Because the notice of sale of said property was not published for the length of time required by the terms of the deed of trust before the sale;

"Second: Because "The Daily News" in which said notice of sale was published was not a "Newspaper" in the sense required by law, and within the meaning of said trust deed, because, as the proof shows, said Daily News was not a paper of general circulation; but was of a very limited circulation, and devoted to publication of special matters which do not.interest the general public; that it was a paper of class circulation and not a proper medium for giving notice to the general public.

"Third: Because the sale of this property by the trustee was brought about by collusion between the Union & Planters Bank & Trust Co., and a representative of the Methodist Hospital, in order that the said hospital might acquire the title to said property at a less price than it could have been bought directly ,from the owner.

## II.

"The court erred in holding and decreeing that the Union & Planters Bank & Trust Co., was entitled to maintain suit in its own name to recover possession of this property, because the record shows that, before the bringing·of its suit by its cross-bill, it had conveyed all its right, title and interest in said property to the Methodist Hospital."

We will dispose of these assignments in the order in which they are stated. Was the notice of sale of said property published for the length of time required by the terms of the deed of trust?

The original deed of trust is in the record, and will be found between pages 49 and 50 thereof. The provision therein with reference to the advertisement of said property is as follows:

"But if said parties of the first part shall fail to pay any part of said indebtedness, whether principal or interest, promptly, when due, or shall fail to pay any sum necessary to satisfy and discharge taxes and assessments before they become delinquent, or to maintain insurance or repairs, or the necessary expense of protecting the property and executing this trust, then, or in either such event, all of the indebtedness herein secured shall, at the option of the owner thereof, and without notice, become immediately due and payable, principal and interest, and the said trustee is hereby authorized and empowered to enter and take possession of said property and before or after such entry to advertise the sale of said property for twenty-one days by three weekly notices in some newspaper published in Memphis, Tennessee, and sell said property for cash, etc."

Before selling said property, the trustee, Mr. W. D. Kyser, caused the said property to be advertised in the Daily News, the first advertisement appeared in the issue of November 12, the second in the issue of November 19, the third in the issue of November 26, and the fourth in the issue of December 3, 1923. The property was sold on the last mentioned date, that is December 3, 1923.

It is seen and admitted that three weekly notices of the sale were inserted in the Daily News prior to the sale. Four weekly notices in all were inserted, but only three were required by the deed of trust. The sale took place on the date that the fourth weekly notice appeared, but in view of the fact that the deed of trust required only three weekly notices, we can treat the advertisement as if only three notices were inserted, attaching no importance to the fourth notice. The result is that the first advertisement was made on November 12th, the second on November 9th, and the third on November 26th, the sale taking place on December 3rd. There are thirty days in November. If we exclude the day on which the notice was first published and subtract 12 from 30, we have 18 days in November. If we exclude (include) the day on which the sale was made, and add the 3 to 18 we have the twenty-one days required by the trust deed. The able solicitor for the complainant says, after calling attention to the dates on which the advertisement was inserted and the date on which the sale appears, "From this it appears that the advertisement ran exactly twenty-one days, and that it ran only twenty days if the first day be excluded as required by law." We think this statement is not accurate. If the first day be excluded and the day of the sale be included, then the advertisement ran twenty-one days. If the first day of the advertisement be included and the day of sale also be included, it ran twenty-two days. Said solicitor also says:

"If it be conceded that the advertisement ran full twenty-one days, yet it was not legal to sell it on the last day of the twenty-one days, if the sale was made in the middle of the last day." In support of this insistence, said solicitor cites authorities which we will hereafter refer to and discuss.

By Section 60 of Shannon's Code (Annotated), Sec. 48 of the Code of 1858, it is provided that, "The time within which an act provided by law is to be done, shall be computed by excluding the first day and including the last, unless the last day is Sunday, and then it shall also be excluded." It is seen that the reference in this statute is to an act provided by law to be done, and not to an act provided by contract. But as we shall hereafter see, the statute furnishes a very good rule for ascertaining the time within which an act required by contract to be done shall be performed.

Complainant next cites 38 Cyc., 322, where it is said that, "In general, statutes regulating the subject of notice are to be construed as respects the computation of time most liberally in favor of the party affected by the notice. It is an established rule that when notice of so many days is required by statute, order of court or written instrument before a certain thing is to be done, or a certain event is to occur, the day of giving, serving, or publishing the notice is to be excluded and the last day is to be included, so that if the act is done or the event occurs on the last day it is sufficient."

In 27 Cyc., 1465, also cited for complainant, it is said, that "A power of sale contained in a mortgage or trust deed must be strictly pursued and all its terms and conditions fully complied with, in order to render the sale valid."

In the same volume, beginning on page 1471, under the heading "Mortgages, Publication of Notices," it is said that "Where notice is to be given by advertisement in a newspaper, the publication must conform fully to the requirements of the statute regulating it, or to the provisions in regard to this matter which may be found in the mortgage or deed of trust. In so far as the details are left to the discretion of the trustee or mortgagee, it is his duty to exercise care and entire good faith in giving reasonable publicity to the time, place and terms of sale, for the protection of the interests of all concerned." It is also said that (pages 1472-1473) "Directions of the statute or of the mortgage as to the length of time the notice must be published, or the number of times it must appear, are imperative, and a sale made without strict compliance therewith is invalid and passes no title. If the provision is that a certain number of day's notice shall be given, this means that that number of days must elapse between the first publication

and the day of sale, not necessarily between the last publication and the sale. In computing the number of days the first is to be excluded and the last included, and the intervening Sundays may be counted in to make up the requisite number of days, although there was no publication on such Sundays. Under a provision of this kind some of the decisions hold that the publication of notice must be continuous; that is, there must be a publication on every one of the required number of days, or at least on each of the secular days; but others maintain that it is sufficient if the requisite number of days elapse between the first publication and the sale, although the notice may not have been published an equal number of times.''

The citations in 23 Cyc., 746, 38 Cyc., 315 and note 50, Blalock v. State, 24 Pick., 187, and Cowan v. Donaldson, 11 Pickle, 323, are not in point.

In the case of Union Trust Co. v. Electric Railway Co., 101 Tenn., 297, it was held that a suit for foreclosure of a mortgage, brought after default, but within six months thereafter, was premature where the mortage provided that after six months, continued default in payment of principal and interest, the trustee or mortgagee might take possession and operate the property and apply the net income to the interest and principal in default, and further provided that upon default and entry as aforesaid, or without such entry, there might be foreclosure by suit or otherwise. It was said that the word ''within'' or ''after'' a certain time, embraced the last day of the time limited. In that portion of the opinion appearing on page 304 of said volume, it is said: ''The rule is, we think, correctly stated in general terms in Farmers Loan & Trust Co. v. Chicago, etc., Ry., Co., 27 Fed. Rep., 151, substantially as follows:

''When the trustee may proceed to foreclose on account of default depends on the construction of the mortgage. It is generally held that the right exists to proceed at once unless it appears from the terms of the mortgage to be the intent of the parties to postpone the right.''

In the case of Allen v. Effler, et al., 144 Tenn., 685, it was held that under a contract giving purchasers an option to buy land ''at any time within 18 days from the date hereof,'' the date on which the contract was executed was to be excluded and the last day included in computing the length of time in which the purchasers had the right to exercise the option, in view of Shannon's Annotated Code, Section 60. In that case the owner of the land granted an option to Broyles to purchase the land at ''any time within eighteen days from the date hereof.'' Said option was dated February 12, 1920. Broyles sought to exercise it on the first day of the next month. Among other things the Supreme Court said: ''If the date upon which the contract was executed be in-

cluded within the eighteen days, then the option of the defendants had expired; if it be excluded, the option had not expired. Hence we are to determine in this case whether the date of the execution of the contract shall be included or excluded in computing the length of time within which the defendants had the right to exercise the option." In was held that the date of the option would be excluded and that the defendants had the right to exercise the same on the last or 18th, day arrived at after excluding the date of the execution. See also 8th How. Pr., 385; 55 Cal., 476; 30 Md., 262.

Measuring the time during which the home place was advertised according to the rules announced in the above authorities, it follows that, if said property was advertised for a period of twenty one days to be arrived at by excluding the date on which the first advertisement appeared and including the date on which the sale was made, the advertisement was sufficient. As already demonstrated, the period of time between November 12, 1923, and December 3, 1923, excluding the first day and including the last day, is twenty-one days. This being true, the provision in the deed of trust with reference to the time the property should be advertised was complied with, and the first division of the first assignment is overruled.

We have already seen that through the second division of the first assignment it is insisted that said property was not advertised in a newspaper as provided and required by the deed of trust. It is admitted that said property was advertised in the Daily News. The question is whether the Daily News is a newspaper. The Daily News was introduced as evidence and appears in the record. It is an imposing sheet of four pages in length and width the size of the ordinary newspaper. It contains, among other things, a list of the building permits issued since the last issue, a note that progress is being made in the reconstruction of the Peabody Hotel, a column with reference to news pertaining to stocks and bonds, a column giving the names of people who had recently moved from one address in Memphis to another address, a list of new arrivals at the hotels, a record of marriage licenses, births, and proceedings in the probate court, guesses on the cotton crop, proceedings in magistrate's courts, a statement that material had arrived for the automatic switch board, a record of deaths, news of proceedings in the U. S. Court, proceedings in the chancery and circuit courts, some eighteen or twenty publication notices, trustee's sale notices, attachment notices, etc., a daily abstract of transfers filed in the register's office of Shelby county, Tennessee, the jury calendars of the circuit courts, other items of public interest, and numerous advertisements.

Mr. Neff, deputy clerk and master of the chancery court of Shelby county, testified that the Daily News was selected by the clerk and master's office as the newspaper in which to make its court advertisements; that the great majority of legal notices of all descriptions had been published in the Daily News for many years, that in his judgment about 99% of the trustee's sales of land made in Shelby county were advertised in that paper. Said paper has a circulation of about three thousand and is subscribed for principally by business men, lawyers, bankers, clerks of court, etc. It is not sold at the newstands but it is delivered by mail or carrier direct to subscribers.

In 27 Cyc., page 1473, it is said, "if the statutes, the mortgage or trust deed, or an order of court specifies the newspaper in which the notice is to be published, either by name or with reference to the place of its publication, or by describing it as the paper having the largest circulation in the place, it must be strictly followed. Otherwise, the selection of the paper is left to the discretion of the mortgagee or trustee; and while it is not imperative that he should choose the paper that will in fact give the utmost possible publicity to the notice, yet he must act in good faith and exercise reasonable care, and it will be ground for vacating the sale if he caused the notice to be printed in an obscure newspaper of very small circulation. The paper should be a newspaper in the general acceptance of that term, excluding trade journals and papers devoted exclusively to religious or other special interests." In a note under this section, the case of Hill v. King, 38 Minn., 349, is cited where it was held that a weekly newspaper containing principally religious news of the day, embracing every sort of news of interest to the general reader, was a newspaper. And in the case of Taylor v. Reid, 103 Ill., 349, it was held that the notice of a trustee's sale might be published in a legal newspaper, or journal devoted to the dissemination of legal news, the publication of legal and judical notices, and the like.

In the case of Lynch v. Durfee (Mich.), 24 L. R. A., 793, it was held that a weekly journal devoted primarily to the interests of the legal profession, but containing matters of interest to the general public, such as personal items, notices of passing events, a record of property transfers and mortgages and general trade advertisements, and having bankers, brokers, real estate agents, merchants and business men, as well as judges and lawyers, among its subscribers, was a newspaper within the Michigan statute providing for publication of legal notices in a newspaper.

In the case of Lynn v. Allen (Ind.), 23 L. R. A., 779, and herein above referred to, it was held that a daily journal having a circulation of about three thousand copies among judges, lawyers, bankers, collection and commercial agents, real estate dealers, merchants

and other professional and business men, and kept on sale at public newstands although devoted primarily to legal matters, but publishing proceedings of the Board of Public Works, and a complete record of deeds filed in the recorder's office, as well as mortgages, mechanics and other liens, assessments, and sheriff's sales of real estate, together with the quotation of local securities, railroad time tables, and having one or more columns devoted to the general news of the day, was a "newspaper" of general circulation, within the meaning of. the statute of Indiana.

In 5 Words and Phrases Judicially Defined, page 4792, it is said that in ordinary understanding a newspaper is "A publication containing a narrative form of certain events and occurrences published regularly, at intervals from time to time, and the publishing at intervals has always been deemed necessary to constitute a newspaper." In the same volume, page 4793, it is said that a newspaper devoted principally to legal intelligence is a newspaper in which notices required by statute or the order of courts may be published, and comes within the statutory definition of a newspaper for the publication of legal notices. Numerous cases are cited in support of the text. See also 3 Words and Phrases Judicially Defined (2nd Series), 604, and Oison v. Bibb Co., Anno. Cas. 1913 D, 877.

In view of the above authorities and for the reasons stated, we are of opinion that The Daily News was and is a newspaper in the sense required by law and by the deed of trust directing the publication of the notice of sale. The second assignment is overruled.

As has already been seen, through the third division of the first assignment it is insisted that the Union & Planters Bank & Trust Co., and the Methodist Hospital were in collusion. There is in the record no proof to sustain this insistence, and the third division of the first assignment is overruled.

In support of the 2nd assignment, which is the last, it is said that it appears from the record that prior to the filing of the bill in this case, the Union & Planters Bank & Trust Co., had conveyed the property in question by deed to the Methodist Hospital, and that the deed had been accepted by the hospital and put of record, that it therefore appeared that, at the time of the filing of its cross-bill, the Union & Planters Bank & Trust Co., was without title to said property, and that the chancellor was therefore in error in decreeing that said bank could maintain its said cross-bill and recover from complainant the possession of the property.

The bank admits that, prior to the filing of the bill in this cause, it had conveyed the property in question to the Methodist Hospital, that the deed had been accepted and by the hospital placed of record; but it says that, at the time the conveyance was made to the hospital,

the complainant herein, J. H. Pope, was in possession of the property, claiming it adversely to the bank, and that the deed to the hospital was therefore champertous and that said hospital took no title to said property, but that the title remains in the bank and it was entitled to recover possession of said property under said cross-bill and that the chancellor was correct in so holding.

Complainant says that the matter of the deed being champertous is an afterthought. He admits that complainant was in possession of the property at the time the deed to the hospital was made, but says he was not claiming it adversely to the bank, and that in order to make a deed champertous, the property must be in possession of a third person who is claiming it adversely to the grantor at the time of the making of the deed. Numerous authorities are cited to sustain this insistence and we think they do sustain it, but we are also of opinion that complainant was claiming the property in question adversely to the bank at the time it made the deed to the hospital. Complainant calls attention to a statement contained in the Bank's cross-bill as follows: ''After cross-complainant had purchased said property it demanded possession of the property from defendant J. H. Pope, and the said cross-defendant made no question as to cross-complainant's right to possession of the property, but did not vacate, and several months passed during which time said cross-defendant was occupying the premises without paying cross-complainant any compensation therefor, and without asserting any adverse claim or right to possession at that time, and in fact, no such adverse claim was asserted by said cross-defendant until the filing of the original bill in this cause.''

It is seen that cross-complainant does not state that cross-defendant ever conceded cross-complainant's right to the possession of said property. The meaning of the statement quoted is that cross-defendant never asserted to cross-complainant that he was claiming the property adverse to it.

On the other hand it appears from the statement of the cross-defendant, J. H. Pope, himself that he was claiming the property adverse to the cross-complainant and had been so claiming it from the time of the foreclosure of the deed of trust executed by Colyar Reese and wife. He says that he was occupying the property when the trustee sold it to the bank, that he continued in possession, never paid any rent, and it appears he never did anything indicating that he conceded the right of the bank to possession. He says that after the property was sold by the trustee the bank never demanded possession of him and that after conveyance to the hospital no one ever demanded possession of him, and that ''I remained in possession because I felt I had a right to do so.'' (R. 112-113.)

In his bill filed in this cause he asserts that the deed of trust was never lawfully foreclosed and that the bank, the purchaser at the trustee's sale, has no title to the property. The meaning of the statements contained in his original bill and also in his testimony is that he now claims and has claimed from a time antedating the foreclosure of said deed of trust that the right of possession to said home place was and is in him. It does not appear that his attitude at the time of the filing of the bill was at all different from his attitude toward said property during the time between the date of the trustee's sale, and the filing of the bill. In the case of Key v. Snow, 90 Tenn., 663, 669, it is said:

"The next point to be considered is the defense of champerty. The defendants, by answer, plead and in evidence show that these complainants, prior to the bringing of this suit, by deeds, in which their husbands joined, conveyed all their title and interest to the Crab Orchard Coal Company. They allege and show that at the date of this deed they were in the adverse possession of the lands now in controversy.

The facts concerning this champertous sale are fully set out in the case of Lenoir Heirs v. Mining Company, reported in 4 Pickle. That case was a suit brought by these complainants and the Crab Orchard Coal Company against the defendants now sued, and for the recovery of the same lands. For the reasons stated in that opinion the bill was dismissed. The difference between that suit and the present one is: (1) The husbands of complainants were joint complainants with their wives; (2) the champertous vendee was there a co-complainant; (3) the bill, on its face, set out the champertous character of the sale, while in this bill the champerty only appears as a defense. The decision in that case does not govern this. That case only decided that where the fact of champerty appeared on the face of the bill, and where such vendor and vendee joined as complainant, that a court of equity would not maintain the suit. The principle governing courts of law where there has been a champertous sale is well settled.

In Fowler v. Dickson, the court held that "where the conveyance is void for champerty, the title remains in the grantor so as to enable him to maintain an action upon it, and the void deed cannot be set up by a third person to the prejudice of his title." 7 Heisk., 729; 11 Humph., 190.

This principle is as applicable to a defense of this kind to a bill of ejectment in equity; since the statutory enlargement of chancery jurisdiction, as it was in courts of law.

It is next urged that this suit should be dismissed for maintenance, in that, the Crab Orchard Coal Co., vendee under the void deed, is in fact prosecuting it for its own benefit, using the

name of complainants as plaintiffs. We do not think this suit is being prosecuted by virtue of the terms of the so-called 'option contract' set out in Lenoir v. Mining Company. The proof is that the Crab Orchard Coal Company applied to complainants, after dismissal of former suit, for permission to file a bill in their names, and this permission was granted.

It is clear that a vendee who had failed to obtain the legal title by reason of an adverse possession at date of his deed, might, at law, with the consent of his vendor, bring an action in the name of his vendor to recover lands conveyed under a deed affected by the statute against champerty. The practice at law was to insert in the declaration a count in the name of the vendor. The privity between vendor and vendee in a champertous conveyance is such as to make an amendment inserting a count in the name of the vendor relate to date of original suit. Nance v. Thompson, 1 Sneed., 321.''

In the case of Green v. Cumberland Coal & Coke Co., 110 Tenn., 35, it was held that a sale of lands held by the vendor under a perfect title but in the adverse possession of another at the time was a sale of a pretended title within the statute making such sales null and void as champertous without regard to the duration of such possession; and that a conveyance of land adversely held was a nullity and the vendor of such land might disregard his deed and in his own name sue in ejectment to recover the land, without specially pleading the invalidity of such conveyance.

It is also said for complainant that, since he bought this property subject to the mortgage that Colyar Reese and wife had given on same, he, ''Thereby became in legal effect the mortgagor, holding his title in subordination to the title of the trustee in said deed of trust,'' and it is argued that since, as a matter of law, he held his title in subordination to the title of the trustee, there could be no adverse holding.

We think there are several answers to this insistence. In the first place, the cross-defendant (complainant herein) was not the mortgagor. He never signed the mortgage, nor any of the notes that the mortgage secured. The indebtedness secured by the mortgage was never charged to him. In the second place, he is not contending against the trustee named in the deed of trust, but his contention is made against the purchaser from the trustee, his insistence being that said deed of trust has never been lawfully foreclosed. As above stated, his own testimony shows that he is and has been claiming the property adversely to the Union & Planters Bank & Trust Company. The second, which is the last assignment, is overruled.

With reference to the third division of the first assignment through which it is insisted that the Union & Planters Bank & Trust Company

and the Methodist Hospital were in collusion and that the property did not bring what it was worth when sold by the trustee it should be stated that the Union & Planters Bank & Trust Co., on the trial of the case, "Though denying any obligation upon it so to do," agreed "that its purchase of said property and the vesting of title to same in it by this decree may have the effect to cancel any obligation of the said Colyar Reese notes for further payment, which is accordingly so ordered, adjudged and decreed." The Colyar Reese notes, with interest, taxes and insurance paid by the bank to be added amounted to $46,848.71, and notwithstanding the bank purchased said property for $20,000, it agreed that the purchase might operate to satisfy said indebtedness of $46,848.71. (R. 228-229).

We are of the opinion that the chancellor reached the correct result in this case and that there is no reversible error in his decree. It is affirmed, and the complainant and cross-defendant, J. H. Pope, having been ordered to vacate said property and to surrender possession of same to the Union & Planters Bank & Trust Co., within thirty days from the date of the entry of the degree, and the clerk and master having been directed to issue a writ of assistance to the sheriff commanding him to remove all persons and property from said home place and to put the said Union & Planters Bank & Trust Co., in possession of same, if the said J. H. Pope did not voluntarily surrender possession as ordered, the cause will be remanded to the chancery court of Shelby county that the decree of the chancellor may be enforced.

The appellant, J. H. Pope, and Hartford Accident and Indemnity Co., surety on his appeal bond, will pay the costs of the appeal.

If desired, upon the remand, a reference may be had to ascertain what rents have accrued pending the appeal and for which the said J. H. Pope is liable, and the amount of said rents being so ascertained, the chancellor may enter a decree for same.

Affirm and remand.

Owen and DeWitt, JJ., concur.