NAPIER v. STONE et al.—114 S. W. (2d), 57.

Middle Section.    October 30, 1937.

Petition for Certiorari denied by Supreme Court, March 5, 1938.

Louis Ferguson, of Nashville, for appellant Mrs. Napier.
A. A. Adams, Jr., of Lebanon, for appellees Stone et al.

CROWNOVER, J. This is a suit to set aside a sale of land under a deed of trust and to have said deed of trust reformed and released.

Mrs. Ella Napier was the owner of a twenty-acre tract of land in the Twelfth civil district of Smith county, for which she had paid $450 in 1932.

On March 15, 1934, she executed a note for $95, due one year after date, to the Lebanon Cemetery Trust Fund, and on the same date executed a mortgage on her land to secure same.

On May 1, 1934, she executed a note for $35, due sixty days after date, to the "Lebanon Cemetery," and on the same date executed a deed of trust conveying said lands (subject to the first mortgage) to A. A. Adams, Jr., trustee, to secure same.

Mrs. Napier insists that she borrowed and was given only $60 in March and $15 in May.

C. L. Stone contends that Mr. and Mrs. Napier applied to him for a loan of $60; that he told them he would procure a loan for them from the Lebanon Cemetery trust fund if they would borrow $95 and pay him $35 which Will Napier owed him, and execute a note for $95 to the Lebanon Cemetery trust fund and a first mortgage on Mrs. Napier's property to secure it; that they agreed to this and executed the note and mortgage, he taking the acknowledgment, and he secured the loan of $95 for them, took out $35 in payment of Will Napier's debt to him, and gave Mrs. Napier $60.

Mrs. Napier insists that she asked Stone to make her a loan of $60 to which he agreed; that she did not agree to assume any of her husband's debts; that nothing was said about the Lebanon Cemetery; that Stone gave her $60 and she signed a note and mortgage without reading them; that she is uneducated and cannot read but can write her name.

As to the $35 note and deed of trust the testimony is similar. Stone testified that Mrs. Napier wanted to borrow $15, that he told her he would arrange for a loan from the Lebanon Cemetery if she would borrow a sufficient amount to pay him $20 which Will Napier owed him for a mule; that this was agreed to; that he wrote a note for $35 and a deed of trust to secure the same, which they signed, he (Stone) taking the acknowledgment to the deed of trust, and he secured $35 from the cemetery fund and gave Mrs. Napier $15. Mrs. Napier's insistence is that she asked for $15; that her husband's debt was not mentioned; that she received $15 and executed a note and deed of trust without reading them.

There is some testimony that the signatures of Will Napier on the notes and mortgages are forgeries, but this is controverted. But there is no evidence that Mrs. Ella Napier's signature is not her genuine signature. Both instruments are obligations of Mrs. Napier's. Will Napier's signature on them was unnecessary. The chancellor found that he signed them, and we think he was correct. But this does not affect the suit.

On the 25th of May, 1934, Mrs. Napier repaid $15 of the last loan to Stone, for which he gave her his receipt. She testified that she asked him to release the second mortgage and he told her that he would do so when she paid interest on the $15 for three weeks and the cost of recording the deed of trust, which he told her she could pay when she paid off the first mortgage. Stone testified that, when she paid the $15, she asked that the trust deed be released and that he told her he would release it when she paid the balance of the $35 loan. He admits that she demanded her note when she paid the $15.

Mrs. Napier testified that she discovered five or six months later that the mortgages on record were for the sums of $95 and $35; that she went to Stone's house and told him what she had discovered and he said that he had added to each loan a sum her husband owed him, but he finally agreed to correct the mortgages. Stone denies this.

On January 28, 1935, the trustee under the deed of trust to secure $35 (on which had been paid $15.00) advertised the land for sale on the 19th of February, to satisfy a note for $35, by posters placed at three places in the county—the courthouse, Cooksey's store at Rome, and on the property. The advertisement did not mention the name of the holder of the note.

No notice was given to Mrs. Napier, who was living in Nashville at this time, and she did not know of the sale until after it had taken place.

The land was sold (subject to the first mortgage of $95.00) for $10 to E. S. Eatherly, there being only one bid.

This tract of twenty acres had been the home of Eatherly's wife's family, and she was anxious to buy it. Eatherly was related in some degree to Stone.

Mrs. Napier filed her original bill in this cause to have the sale set aside because the debt had been satisfied and because the sale price was inadequate, and to have the deed of trust to secure $35 reformed to read $15, and to have the same released because the note had been paid.

The defendants answered and denied the allegations of the bill, and insisted that the sale was valid.

The chancellor found and held that the material allegations of the bill and the determinative issues made by the pleadings were not sustained by the evidence; that the advertisement and sale of the land were regular; and that the consideration for the land was not inadequate; and he dismissed the complainant's bill.

The complainant excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The chancellor erred in failing to hold that the mortgages were invalid because the acknowledgments were taken by Stone who was interested in the transactions.

630

(2)   The chancellor erred in holding that the mortgages and notes for $95 and $35, respectively, were executed by Mrs. Napier.

(3)   The chancellor erred in holding that the consideration for the sale was adequate.

■■   In this case it appears that Stone acted for the cemetery company; that nobody else connected with the company had anything to do with the transactions; therefore the company is chargeable with notice of the transactions. Where the agent is the sole representative of the principal in the transaction, the principal is chargeable with notice. Smith v. Bank, 132 Tenn., 147, 150, 177 S. W., 72.

■   1. The appellant's first assignment of error is that the mortgage and deed of trust are illegal and void because the acknowledgments were taken by said Stone as notary public when he was interested in the transactions, therefore incompetent to take such acknowledgments.

The cemetery company is incorporated and Stone is stockholder and director and manager.

It was held by our Supreme Court in Cooper v. Hamilton Perpetual Bldg. & Loan Ass'n., 97 Tenn., 285, 37 S. W., 12, 13, 33 L. R. A., 338, 56 Am. St. Rep., 795, and Reed Fertilizer Co. v. Thomas, 97 Tenn., 478, 37 S. W., 220, that such an acknowledgment is not void but voidable; that "while such acknowledgments will not per se be declared void, still they are open to attack, and the court will lend a ready ear to evidence of undue advantage, fraud, or oppression arising out of the fact of such relationship or interest in the officer taking the acknowledgment"—citing Kennedy v. Security Bldg. & Sav. Ass'n., Tenn. Ch. App., 57 S. W., 388; Home Building & Loan Ass'n v. Evans, Tenn. Ch. App., 53 S. W., 1104.

The evidence is not sufficient to establish fraud, as will be shown hereinafter in the second assignment of error.

The first assignment of error must therefore be overruled.

2.   No witness was introduced for the Lebanon Cemetery Company except C. L. Stone, who testified that he was manager and a director and stockholder and made the loan.

The testimony for the complainant relied upon for the reformation of the instruments is that of herself, her husband, her seventeen year old daughter, her thirteen year old son, and her son-in-law. Another witness, Bill Stevens, was present when the $15 was borrowed.

Stone testified that the mortgages were perfectly regular; that Mrs. Napier borrowed from the cemetery company the amounts shown by the mortgages.

■   This is denied by Mr. and Mrs. Napier, but Mr. Napier is discredited. The testimony of the boy of thirteen years of age and of the girl of seventeen and of the son-in-law is of no value, as it is full of contradictions.

██ We are of the opinion that the evidence for the complainant is not sufficient to warrant the reformation of these notes and mortgages. For a court of equity to reform written instruments for mistake, fraud, or accident, the evidence must be clear and convincing. Jones v. Jones, 150 Tenn., 554, 555, 266 S. W., 110; Fuchs v. Fuchs, 2 Tenn. App., 133.

It is not contended that the deeds and notes were altered, and they show no signs of alteration.

Mrs. Napier's contention seems to be that she borrowed $60 and $15 and Stone filled out the notes and mortgages for $95 and $35 respectively, and she signed them without reading them.

In view of the authorities above cited on reformation, we are of the opinion that the evidence is insufficient to make out the case, and this assignment is overruled, and we hold that the notes and mortgages were for $95 and $35, respectively as executed.

██ 3. We are of the opinion that the chancellor erred in holding that the sale price of the land was adequate, and the appellant's third assignment of error is sustained.

We think the sale price was so inadequate as to shock the conscience of the court, and the sale should be set aside.

The land was sold for $10 and the first mortgage of $95 was assumed. The taxes for two years were delinquent, the amount per year being $3.35. The total consideration was therefore about $117.

Mrs. Napier knew nothing about the sale until after it had been held. It was advertised by typewritten notices posted in the county. No effort was made to notify her. Stone testified that he mailed a copy of the notice to Will Napier in care of his brother, Shade Napier, at a shoe factory in Nashville, but he did not receive it.

Mrs. Napier paid $450 for the land in September, 1932. It appears that since that time some of the timber has been cut, erosions have taken place, and some of the fences are down. This would lessen its value. But a barn has been built on the land since then.

The defendants' evidence was to the effect that it worth from $140 to $200. The appellant's evidence is that it is worth $500.

Stone recommended to the cemetery company loans to the amount of $130 on the land. He evidently thought it was worth more than that amount at that time.

It was stated in the case of Donaho v. Bales, Tenn. Ch. App., 59 S. W., 409, 410:

"The testimony shows that the real estate in controversy, at the time defendant, Bales, purchased it, was worth between $300 and $400, and that he purchased it at the trustee's sale for $50, and took a deed absolute to himself. The price was shockingly inadequate, and the sale should be set aside on this ground. In Wright v. Wilson, 2 Yerg. 294, it appeared that property worth $500 sold for $50.

This was held to be an inadequacy so great as to shock the conscience. The same result was declared in Hardeman v. Burge, 10 Yerg. 202, 205, on a state of facts showing that the property involved had brought only three-fourths of its value. So in Deaderick v. Watkins, 8 Humph. 520, where $100 was given for a claim of $325, and again where $175 was given for a claim of $500; and in Coffee v. Ruffin, 4 Cold. 487, 507, where an exchange of lands was rescinded, the property given in exchange being worth twice the assumed value, and three or four times the real value of that received; and in Hansard v. Sharp, 1 Tenn. Cas., 48, where property worth $1,200 to $1,500 was sold for $200. In Herne v. Meers, 1 Vern. 465, 2 Brown, Ch., 176, note, a contract of sale was set aside at the instance of the general creditor of the vendor upon the ground that the premises purchased were worth more than double the money paid. In Heathcote v. Paignon, 2 Brown, Ch., 167, the sale of an annuity for the value of 4 years' purchase, which was worth 10 years' purchase, or 2½ times more than the price paid, was set aside for inadequacy. These last two cases are cited and approved in Mound City Mut. Life Ins. Co. v. Hamilton, 3 Tenn. Ch., 228, 231. Also in Wright v. Wilson, supra, two English authorities are cited with approval in which it was held that, where property sold for only one-half or two-thirds of its value, the inadequacy was sufficient to shock the conscience of the court. Mere inadequacy, of course, is not per se a ground to avoid a bargain, in equity; but the inadequacy may be so great as to shock the conscience of the court, and amount of itself to conclusive proof of fraud, and it then is a distinct ground of relief. Story, Eq. Jur., section 246.''

In the case of Mound City Mutual Life Insurance Company v. Hamilton, 3 Tenn. Ch., 228, 231, Chancellor Cooper said:

''One ground upon which relief has been sought, both in private and judicial sales, has been inadequacy of consideration. Mere inadequacy of price will not itself suffice to set aside a contract of sale, though it is strong evidence of fraud or imposition, and when coupled with other, even slight, circumstances, may authorize rescission. White v. Flora, [2 Overt. 426], 2 Tenn., 426. If, indeed, the inadequacy be such as, in the language of Lord Hardwicke, 'no man in his senses, and not under delusion, would make, on the one hand, and as no honest and fair man would accept, on the other' (Earl of Chesterfield v. Janssen, 2 Ves., 155); or such as, in the language of Lord Thurlow, 'it would be impossible to state to a man of common sense without producing an exclamation at the inequality of it' (Gwynne v. Heaton, 1 Bro. C. C., 11); or such as, in the language of Lord Eldon, 'shocks the conscience' (Coles v. Trecothick, 9 Ves., 246);—nothing more is required to entitle a party to relief. For, in such cases, fraud becomes a presumption of law. Butler v. Haskell,

4 Desaus. [S. C., 651], 687. And relief may be had even at law. James v. Morgan, 1 Lev., 3. In Herne v. Meers, 1 Vern., 465 (Id., 2 Bro. C. C., 176, note), a contract of sale was set aside at the instance of the general creditors of the vendor, upon the ground that, 'the premises purchased being worth more than double the money paid,' the bargain 'ought in conscience to be made void.' In Heathcote v. Paignon, 2 Bro. C. C., 167, the sale of an annuity for the value of four years' purchase, which was worth ten years' purchase, or two and a half times more than the price paid, was set aside for inadequacy. These decisions were cited and approved in Wright v. Wilson, 2 Yerg., 294, where the sale of land worth $500 for only $50 was set aside; and again in Coffee v. Ruffin, 4 Coldw., 487, 507, where an exchange of lands was rescinded, the property given being worth twice the estimated value, and three or four times the real value, of the property received.''

See, also, to the same effect, opinions of this court in the case of American Trust Company et al. v. Nashville Improvement Company, Davidson Equity, filed at Nashville on January 17, 1931; and Corinne Cuff v. W. L. Wilson et al., Davidson Equity, filed at Nashville on November 16, 1934.

Stone took the acknowledgment, did not notify Mrs. Napier of the sale, and did not post five notices in the county as required by statute, Code, section 7796.

Where the time, place, and terms of sale are not fixed in the mortgage or deed of trust, then the same are governed by statute. Potts v. Coffman, 146 Tenn., 282, 240 S. W., 783. But, where the time, place, and terms of sale are set out in the deed of trust, the deed of trust controls and must be fully complied with in order to render the sale valid. Pope v. Craft, 1 Tenn. App., 356, 361; Howell v. Martin, 8 Tenn. Civ. App., 520, 523; 27 Cyc., 1465, 1471.

It will be observed that the deed of trust does not state how many posters should be put in public places, therefore it should have been advertised as required by the statute.

While a sale not advertised according to the statute is not invalid, yet we can take into consideration this fact of insufficient advertisement in connection with the other facts of the case in determining why the land did not bring an adequate price.

Taking all these facts and incidents together with the fact that the sale price was inadequate, we think the sale should be set aside.

It results that the sale will be set aside. The appellant will be given sixty days from the entry of the decree in this court to pay the balance of the second mortgage and interest. In default of which the property may be resold in accordance with the provisions of the deed of trust. In the event the mortgage debts are paid, a writ of possession may issue, if necessary, to place the complainant into possession of the property.

634

The costs of the cause, including the costs of the appeal, are adjudged against the cemetery company, C. L. Stone, and Mrs. Lucile Eatherly.

Faw, P. J., and Felts, J., concur.