OBIE EXUM, Appellant, v. WASHINGTON FIRE AND MARINE INSURANCE CO. et al., Appellee.— 297 S. W. (2d) 805.

Western Section Jackson. November 3, 1955.

Petition for Certiorari denied by Supreme Court, June 8, 1956.

Clyde P. West, Memphis, for appellant.

W. Wright Mitchell, Canada, Russell, Turner & Alexander, Memphis, for appellee.

CARNEY, J. The only question presented by this appeal is whether or not a release and settlement of an

automobile fire insurance policy executed by appellant in the office of and witnessed by a Deputy State Fire Marshal was executed under such duress as to render it void.

The complainant, Obie Exum, is a negro man aged 37 who lived in Tipton County, Tennessee. He finished the eighth grade in school and can read and write and seems to have average intelligence.

In 1953 he purchased a 1947 Chevrolet automobile for $895 of which $295 was represented by the trade-in of another car. The remaining $600 was financed by a conditional sales contract and monthly payment notes which were assigned to the Commercial and Industrial Bank. The fire insurance policy sued on in this case insured both the bank as the holder of the notes and also the complainant as the owner of the car. The coverage was limited to the actual value of the automobile.

On August 12, 1954, while the policy was in force the automobile burned and the next day the insured, complainant Obie Exum, promptly notified the insurance company who turned the claim over to the Insurance Adjustment Company of Memphis, Tennessee for investigation and settlement. The Insurance Adjustment agency is a general adjustment agency and is in no way owned or controlled by the defendant Washington Fire and Marine Insurance Co.

The next day the witness, Mr. Wimmer, an official or employee of the Insurance Adjustment Company, accompanied Obie Exum to the scene of the fire where he examined the burned automobile and adjacent premises. He then and there told Exum that he did not believe his story as to how the fire originated and that he was going

to report the matter to the State Fire Marshal for further investigation as to whether or not the fire was the result of arson and that he was not going to pay the loss at that time and that he, Wimmer, would get in touch with Exum later.

The witness, Mr. Wimmer, did report the matter to Mr. Joe Baker, the Deputy State Fire Marshal, whose office was located in the Sterick Building in Memphis, Tennessee in which building the offices of Mr. Wimmer and the Insurance Adjustment Company were also located. A week or two later Mr. Wimmer and Deputy Fire Marshal Baker again investigated the scene of the fire and surrounding premises and they were both of the opinion that the fire was of incendiary origin.

Soon thereafter the complainant Obie Exum retained an attorney to represent him and on September 11, 1954, his attorney wrote to the insurance company as follows:

"708 Columbian Mutual Tower Bldg.
"Memphis, Tennessee,
"September 11, 1954.

"Washington Fire and Marine Ins. Co.,
"c/o Commercial and Industrial Bank,
"Sterick Bldg.,
"Memphis, Tenn.

"Att: Mr. Wimmer

"Dear Sir:

"I represent Obie Exum whose automobile was burned about 11:50 (eleven-fifty) P.M. on August 12, 1954, while it was parked at the residence of Obie Exum on Route 1, Tipton, Tenn. This automobile is insured under Master

Policy No. F I, Certificate No. B. F. 25678. The value at the time of the loss is in the sum of $350.00 (350) dollars.

"I will be glad to furnish any additional information you desire, and if there are any forms or proof of loss that should be filed in, or completed I will appreciate it if you will mail them to me and I will see that they are properly completed and returned to you.

"I will appreciate hearing from you in regard to this matter.

"Sincerely yours,

"Clyde P. West, Attorney.

"CPW/lcm"

This letter was delivered to Mr. Wimmer, the employee of the Insurance Adjustment Bureau, and no reply was made thereto.

On September 22, 1954, the Fire Marshal, Mr. Baker, went to Exum's place of employment in the City of Memphis and required him (Exum) to go to Mr. Baker's office for questioning in regard to the burning of the automobile. Exum accompanied Mr. Baker to the Sterick Building and as they passed the door or window of the office occupied by Mr. Wimmer, Mr. Baker notified Wimmer that he and Exum were in the building by tapping on the window. Exum and Mr. Baker went up to Mr. Baker's office where Mr. Baker told Exum that he did not believe his story about the manner in which the car caught on fire and that he believed that Exum burned the automobile. Exum refused to confess and denied his guilt.

From Mr. Wimmer's testimony as contained in the narrative Bill of Exceptions we quote as follows:

"That on September 22, 1954 Mr. Baker, the Fire Marshal, called him from his office and that he went to Mr. Baker's office in the Sterick Building and Obie Exum was there and wanted to settle the case by the insurance company paying off the amount owed the bank. That he then went back to his office and called the bank to ascertain the amount owed them which was $131.85. He got the releases and took them back to Mr. Baker's office where Obie Exum signed them together with the bill of sale for the salvage. That the release was explained to Obie and he knew what he was signing and no threats of any kind were made. That Obie Exum signed the release and a bill of sale, and that by signing these he was releasing his claim and conveying title to the salvage for the sum of $132.85, the bank to be paid $131.85 and Obie Exum to be paid $1.00. That the Fire Marshal gave Obie a quarter to get back to work on and he went back to his office. The insurance company paid the Bank $131.85 and a check was mailed to Obie Exum for $1.00. That he received a letter dated September 11, 1954 from the Complainant's attorney and that he did not communicate with Complainant's attorney and did not feel obligated to do so. That it was customary for him to settle claims with persons directly where they have previously employed attorneys when the person expresses a desire to do so and where no suit has been filed. That he received another letter from Complainant's attorney dated September 27, 1954 and answered this letter stating that his file had been closed. That he at no time asked Obie the

valuation of the automobile and when he took his release on September 22 he did not ask him what he valued the car at.''

From Mr. Baker's testimony as contained in the narrative Bill of Exceptions we quote as follows:

"That on September 22, 1954 he went to Obie Exum's place of work at C. F. Work and Company and told Obie he would have to go with him for interrogation. That he took him to his office and on the way up he pecked on the door of Mr. Wimmer's office, and that after he and Obie were in his office he told Obie he did not believe his story about how the fire started. That Obie told him he had never been in any trouble in his life and that rather than have his reputation ruined he would settle for the balance owed the bank. That Mr. Wimmer then came in the office and that he does not remember whether Mr. Wimmer had the releases with him or whether he went back to his office to get them but believes that Mr. Wimmer never left his office after he got there. That he witnessed the release in his office and that Obie Exum understood fully what was being done. That he was going to take Obie back to work but Obie did not want him to, so he gave him a quarter to get back to work on. That Obie was not in his office more than 30 minutes and was calm and collected and was not frightened. He stated that in his opinion this fire was of incendiary nature, that it could not have resulted from a short circuit because the condenser was not stuck and that he checked this to be sure when he inspected the salvage of the car. That in his opinion gasoline was used to burn the car. That he does not

know who burned the car and therefore he closed his file on the case after Obie signed the releases* * *''

No notice was given by the insurance company to Mr. West, attorney for Obie Exum that it had settled the case with Exum until after Mr. West wrote a second letter on September 27, 1954, which letter is as follows:

"708 Columbian Mutual Tower Bldg.
"Memphis, Tennessee,
"September 27, 1954.

"Washington Fire and Marine Ins. Co.
"c/o Commercial and Industrial Bank,
"Sterick Bldg.,
"Memphis, Tennessee

"Att: Mr. Wimmer          In Re: Obie Exum

"Dear Sir:

"I wrote to you on September 11th, 1954, regarding the loss of an automobile by fire, which automobile was owned by Obie Exum and insured under Master Policy No. F I, Certificate No. B. F. 25678.

"I will appreciate hearing from you in regard to this matter.

"Sincerely yours,

"Clyde P. West.

"CPW:LCM"

On October 7, 1954, Mr. Wimmer, the adjuster, wrote as follows:

"October 7, 1954

"Mr. Clyde P. West
"708 Columbian Mutual Tower Bldg.
"Memphis, Tennessee

"Re: Obie Exum
"Policy No. BF-25678

"Dear Sir:

"In reply to your letter of September 22, please be advised that our files show this claim was closed with your client on September 22.

"Very truly yours,

"The Insurance Adjustment Company
"D. V. Wimmer, Adjuster
"DVW:at"

On this appeal we disregard entirely the statement of Exum that he did not know what he was signing. His Honor, the Chancellor, found that Exum did know what he was signing and the evidence certainly does not preponderate against the finding of the Chancellor on this issue.

However, when we disregard the testimony of Exum entirely and consider the circumstances under which the release was signed as related by witnesses for defendant and when we consider the relationship of the parties, we are of the opinion that the signing of the release was not the free and voluntary act of the complainant Exum.

There is no general rule as to the sufficiency of facts to produce duress. "The question in each case is, Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained? Hence, under this theory duress is to be tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim. The means used to produce that condition, the age, state of health, and mental characteristics of the alleged injured party, are all evidentiary, merely, of the ultimate fact in issue, of whether such person was bereft of the free exercise of his will power. Obviously what will accomplish this result cannot justly be tested by any other standard than that of the particular person acted upon. His resisting power, under all the circumstances of the situation, and not any arbitrary standard, is to be considered in determining whether there was duress." See 17 Am. Jr. in Duress and Undue Influence p. 884.

When we discount the testimony of Exum entirely the following circumstances clearly appear from the record:

This man was taken without notice from his work by a State Fire Marshal to the office of the Fire Marshal in an up-town office building in Memphis, Tennessee, and there without the aid or counsel of his attorney was accused by the Fire Marshal of being guilty of the crime of arson, a felony, in burning his automobile for the purpose of collecting the insurance thereon.

Exum refused to confess his guilt but in the words of the Fire Marshal "Obie told him that he had never been in trouble in his life and that rather than have his reputa-

tion ruined he would settle for the balance owed the bank." Thereupon the insurance adjuster appeared and either brought the release or returned to his office and prepared the release and compromise agreement which the man signed and the Fire Marshal witnessed.

Immediately upon the signing of the release to the insurance company, the Fire Marshal closed his records on the case because he had insufficient evidence upon which to base a criminal prosecution without a confession from the defendant which he was never able to get.

We think the conclusion is inescapable that the release in this case was executed under an implied threat of prosecution or public charge of arson. At the time of the signing the complainant was in the custody of the Fire Marshal and not free to go at will.

■ We think the execution by the insured of the release under the circumstances related above was not done as a free and voluntary act on the part of the insured but as a result of duress and hence the release should be considered void and of no effect.

We also hold that the evidence on this question is clear, cogent and convincing as required by Napier v. Stone, 21 Tenn. App. 626, 114 S. W. 2d 57, and Lawrenceburg v. Maryland Casualty Co., 16 Tenn. App. 238, 64 S. W. (2d) 69.

■ It is to be noticed that the indebtedness of $131.85 was immediately paid by the insurance company to the bank and it is contended on this appeal that the complainant was not entitled to bring the suit in the instant case because it did not tender a return of the $131.85, the benefit of which complainant Exum had in the satisfac-

tion of his debt. Defendants rely on the case of Gibbons v. Mutual Benefit Health & Accident Ass'n, 195 Tenn. 339, 259 S. W. (2d) 653. In our opinion this case is not controlling in the case at bar for two reasons:

In the first place, complainant Exum never was paid the $131.85 directly but only received the benefit of the cancellation of his note. The policy was payable to both the Bank and the complainant as insured and we doubt very much if the insurance company could have avoided payment to the Bank even though arson by the complainant purchaser were proven. In other words, it appears to us that the insurance company merely paid the Commercial and Industrial Bank what it legally owed it anyway and the complainant was incidentally benefited by the payment of his promissory note.

■ In the next place we think the defendant waived its right to insist upon a tender of the $131.85 when it filed an answer to complainant's amended bill alleging duress without making objection to the lack of tender. The parties went to trial on the main issue of duress. We think it is too late to raise this question for the first time on appeal and the defendant has waived its right to insist upon a tender. See Gibson's Suits in Chancery, Fourth Edition, Section 71—"Waiver and Consent."

■ From a consideration of the entire record we do not believe that the complainant is entitled to a judgment for the statutory penalty as provided in Code Section 6434. Harowitz v. Concordia Fire Insurance Co., 129 Tenn. 691, 168 S. W. 163.

■ A judgment will be entered in this Court against the defendant Washington Fire and Marine Insurance

Company in favor of complainant Obie Exum in an amount equal to the difference between $350, face amount of policy, and the $131.85 heretofore paid to the Commercial and Industrial Bank which net balance will be the sum of $218.15. The judgment for $218.15 will draw interest from November 11, 1954, which is sixty days from the date Clyde P. West as attorney for Obie Exum wrote the letter notifying defendant company of the destruction by fire of the automobile.

The defendant Washington Fire and Marine Insurance Co. is taxed with the costs of this appeal and also the costs of the cause below. Decree will be entered accordingly.

Avery, P. J. (W. S.), and Bejach, J., concur.